1
2
3
4
5
6

Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

7
8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17

| | |
|---|---|
| BEIBEI CAI, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VISA INC, RYAN MCINERNEY, CHRIS SUH, and PETER ANDRESKI <br><br> Defendants. | Case No. <br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> JURY TRIAL DEMANDED |

18
19
20
21
22
23
24
25
26
27
28

   Plaintiff Beibei Cai ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Visa, Inc. ("Visa" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES
LAWS

**NATURE OF THE ACTION**

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Visa securities between November 16, 2023, and September 23, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      This action alleges that Visa materially misled investors as to the risk of damaging antitrust investigations being conducted by federal regulators, choosing to downplay the risk despite its high likelihood of manifesting.

3.      On September 24, 2024, these risks came to fruition, as the United States Department of Justice ("DOJ") sued Visa in federal court for monopolizing the debit card payment processing market. This caused a steep decline in Visa's stock price, which Plaintiff now sues, on behalf of the class, to recover.

**JURISDICTION AND VENUE**

4.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

6.      Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and the subsequent damages took place in this judicial district. Further, the Company maintains its principal executive offices in San Francisco County.

7.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

– 2 –

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**PARTIES**

8.      Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

9.      Defendant Visa is a Delaware corporation with its principal executive offices at P.O. Box 8999, San Francisco, California. Visa's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "V."

10.     Defendant Ryan McInerney ("McInerney") has served as the Chief Executive Officer throughout the Class Period.

11.     Defendant Chris Suh ("Suh") has served as the Chief Financial Officer throughout the Class Period.

12.     Defendant Peter Andreski ("Andreski") has served as the Company's Global Corporate Controller and Chief Accounting Officer throughout the Class Period.

13.     Defendants McInerney, Suh, and Andreski are sometimes referred to herein as the "Individual Defendants."

14.     The Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     were directly involved in the day-to-day operations of the Company at the highest levels;

(c)     were privy to confidential proprietary information concerning the Company and its business and operations;

(d)     were directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     were directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     were aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

– 3 –

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

### SUBSTANTIVE ALLEGATIONS
### Background

18.    Visa processes and facilitates debit and credit card transactions. Both businesses and consumers utilize its services.

19.    Visa operates one the largest digital payment platforms in the world; in 2023, it processed $15 trillion in monetary transactions, spread out over more than 200 countries and territories. Visa's services are nearly ubiquitous – over 60% of all U.S. debit transactions are processed by Visa, with Mastercard a remote second.

20.    Visa has parlayed its dominance of the payment processing business into gargantuan profits; it takes in over $7 billion in network fees annually just on U.S. debit volume alone, with the sector earning Visa $5.6 billion in net revenue. Visa's North America business, its most profitable debit region, sports a whopping 83% profit margin.

21.    Unsurprisingly, Visa's market dominance has previously landed it in the crosshairs of federal antitrust regulators; for example, in 2020, the DOJ sued to stop Visa from acquiring digital payments provider Plaid, citing antitrust concerns.

### Materially False and Misleading Statements

22.    On November 15, 2023, Visa filed with the SEC its annual report on Form 10-K for the period ended September 30, 2023 (the "2023 Annual Report") which was signed by Defendants McInerny, Suh, and Andreski.

23.    The 2023 Annual Report stated the following, in pertinent part, about the Company's compliance with business regulations:

**We are subject to complex and evolving global regulations that could harm our business and financial results.**

– 4 –

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

> Our compliance programs and policies are designed to support our compliance with a wide array of regulations and laws, such as regulations regarding anti-money laundering, anti-corruption, competition, money transfer services, privacy and sanctions, and we continually adjust our compliance programs as regulations evolve.

24.    The statement referenced in ¶ 23 was materially false and/or misleading because the Company was not in compliance with federal antitrust laws and did not have effective internal programs and policies to assess and control compliance with federal antitrust laws.

25.    The 2023 Annual Report also contained the following disclosure about the risk of litigation or investigations:

> **We may be adversely affected by the outcome of litigation or investigations.**

> We are involved in numerous litigation matters, investigations, and proceedings asserted by civil litigants, governments, and enforcement bodies investigating or alleging, among other things, violations of competition and antitrust law, consumer protection law, privacy law and intellectual property law (these are referred to as "actions" in this section). Details of the most significant actions we face are described more fully in *Note 20—Legal Matters* to our consolidated financial statements included in *Item 8* of this report. These actions are inherently uncertain, expensive and disruptive to our operations. In the event we are found liable or reach a settlement in any action, particularly in a large class action lawsuit, such as one involving an antitrust claim entitling the plaintiff to treble damages in the U.S., or we incur liability arising from a government investigation, we may be required to pay significant awards, settlements or fines. In addition, settlement terms, judgments, orders or pressures resulting from actions may harm our business by influencing or requiring us to modify, among other things, the default interchange reimbursement rates we set, the Visa operating rules or the way in which we enforce those rules, our fees or pricing, or the way we do business. These actions or their outcomes may also influence regulators, investigators, governments or civil litigants in the same or other jurisdictions, which may lead to additional actions against Visa. Finally, we are required by some of our commercial agreements to indemnify other entities for litigation brought against them, even if Visa is not a defendant.

26.    The statements referenced in ¶ 25 above were materially false and/or misleading because, while discussing legal risks, they fail to disclose that the Company was in violation of federal antitrust law, and therefore likely to be subject to lawsuits and penalties by federal agencies.

27.    On January 26, 2024, Visa filed with the SEC its quarterly report on Form 10-Q for the period ended December 31, 2023, which was signed by Defendants McInerny, Suh, and Andreski.

– 5 –

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

28.     On April 24, 2024, Visa filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2024, which was signed by Defendants McInerny, Suh, and Andreski.

29.     On July 24, 2024, Visa filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2024, which was signed by Defendants McInerny, Suh, and Andreski.

30.     The three quarterly reports referenced above in ¶¶ 27-29 (the "Quarterly Reports") all contain the following language incorporating the risk factor portion of the Company's 2023 Annual Report by reference: "For a discussion of the Company's risk factors, see the information under the heading 'Risk Factors' in the Company's Annual Report on Form 10-K for the year ended September 30, 2023."

31.     The Quarterly Reports therefore incorporate the materially false and/or misleading statements, repeating and reaffirming the statements anew, and constituting new misrepresentations.

### **The Truth Emerges**

32.     During the evening of September 23, 2024, after the market closed, multiple news outlets (among them Bloomberg and Politico) reported that the DOJ planned to imminently file suit against Visa for antitrust violations.

33.     Before the market opened the next day, on September 24, the DOJ filed the reported suit, styled *United States of America v. Visa Inc*., 1:24CV07214, ("the Complaint") in the Southern District of New York, alleging four separate violations of the Sherman Antitrust Act.

34.     Per the Complaint, Visa's dominance in the debit payment processing market is not a happy accident or the result of a superior offering; rather, it is the product of a litany of baldly anticompetitive actions designed to prevent smaller competitors from gaining market share and competing with Visa on the merits.

35.     The suit explains that Visa leverages dual-sided network effects, afforded to it by its existing monopoly position on both sides of the payment processing market, to freeze out smaller competition and cement its market dominance. It further abuses that power by coercing merchants to exclusively use its payments processing platform, thereby causing harm to consumers.

36.     The Complaint describes a variety of specifically impermissible practices under the antitrust laws, including the Company's tying of its debit offering to discounts on the fees charged

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

for its credit offering, its offering merchants below-cost incentives so as to make it financially infeasible for the merchants to utilize any other payment processing platform, and its locking up of both banks and merchants with exclusivity deals that severely penalize them should they use any services other than Visa's.

37.    Because Visa controls so much of the existing market, merchants have no choice but to acquiesce to Visa's demands – if they don't, Visa threatens them with ruinous fees on the debit card transactions that they must process in order to operate a viable business. Per the complaint, Visa's actions ultimately harm consumers, who are deprived of the benefits of a free, fair, and functioning competitive market for debit card transaction processing.

38.    The suit characterizes Visa's actions as "willful" and "unlawful," and further alleges that Visa's monopolization of the debit market is the product of a coordinated, purposeful scheme:

> In undertaking this course of conduct, Visa has acted with specific intent to monopolize each relevant market in the United States. Each of Visa's actions individually and collectively were specifically intended to monopolize each relevant market in the United States by destroying effective competition in those markets through the acts alleged herein. There is a dangerous probability that, unless restrained, Visa will succeed in monopolizing each market in the United States in violation of Section 2 of the Sherman Act.

39.    Further detailing the efforts that Visa expends to perpetuate its monopoly, the complaint states that:

> Visa's dominance today is the result of a meticulous strategy to lock up debit volume to prevent competition at the point-of-sale. It is not an accidental historical artifact of its large size or the result of competition on the merits, but instead the result of deliberate efforts. Visa's efforts effectively forestall competition from smaller debit networks (e.g., PIN networks) and thwart government regulation implemented over a decade ago, which Visa has seen as threats to its dominance.

40.    The Complaint also alleges that Visa enters into collusive agreements with up-and-coming fintech companies in order to ensure that these upstarts do not ultimately pose a threat to the Company's debit payment processing business. Indeed, Visa itself has admitted that it would prefer to collude with and coerce competitors rather than compete on the merits, with the Complaint quoting Visa's former CFO as saying that "Everybody is a friend and partner. Nobody is a competitor."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

41.     In its request for relief, the DOJ asks the Court for a laundry list of remedies, including, *inter alia*, permanent injunctions against the anticompetitive actions - such as coercive contract structures - that enable Visa to collect such high profits.

42.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

43.     On this news, Visa's stock price fell $1.48, or 5.38%, to close at $26.03 per share on September 24, 2024, on unusually heavy trading volume.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

44.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Visa during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

– 8 –

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged violated the federal securities laws;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)     whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's securities are traded in efficient markets;

– 9 –

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES
LAWS

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded on NYSE, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)     Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

51.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
#### Against All Defendants

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55.      During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

– 10 –

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

56.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

57.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

58.      Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

59.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

– 11 –

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

60.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

61.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

62.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

**COUNT II**
**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

63.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

65.     As officers of the Company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company and to correct promptly any public statements issued by the Company which had become materially false or misleading.

66.     Because of their positions of control and authority as senior officers, Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

– 12 –

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

67.     The Individual Defendants, therefore, acted as controlling persons of the Company. By reason of their senior management positions, the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. The Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 20, 2024

Respectfully submitted,

/s/ Laurence M. Rosen

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

– 13 –