MARK R.S. FOSTER (SBN 223682)
mark.foster@skadden.com
BONIFACIO C. SISON (SBN 335484)
bonifacio.sison@skadden.com
MADISON M. FLOWERS (SBN 345759)
madison.flowers@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:  (650) 470-4500
Facsimile:  (650) 470-4570

*Attorneys for Defendants*
*Defendants Visa Inc., Ryan McInerney,*
*Chris Suh, Vasant Prabhu, Alfred F. Kelly, Jr.,*
*Peter Andreski, Oliver Jenkyn, and Jack Forestell*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BEIBEI CAI, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VISA INC, RYAN MCINERNEY, CHRIS SUH, VASANT PRABHU, ALFRED F. KELLY, JR., PETER ANDRESKI, OLIVER JENKYN, and JACK FORESTELL, <br><br> Defendants. | Case No. 5:24-cv-08220-NW <br><br> **(1) DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;** <br><br> **(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;** <br><br> **(3) DECLARATION OF MARK R.S. FOSTER AND EXHIBITS;** <br><br> **(4) [PROPOSED] ORDER** <br><br> <u>SEPARATE COVER</u> <br><br> **(5) REQUEST FOR JUDICIAL NOTICE** <br><br> Date:        December 17, 2025 <br> Time:        9:00 a.m. <br> Court:       Courtroom 3, 5th Floor <br> Judge:       Hon. Noël Wise |

DEFENDANTS' MOTION TO DISMISS AMENDED                    Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 17, 2025, at 9:00 a.m. in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Defendants Visa Inc. ("Visa"), Ryan McInerney, Chris Suh, Vasant Prabhu, Alfred F. Kelly, Jr., Peter Andreski, Oliver Jenkyn, and Jack Forestell will and hereby do move for an order dismissing Plaintiffs' Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), Dkt. 38. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Defendants' Request for Judicial Notice, the Declaration of Mark R. S. Foster ("Foster Decl.") submitted concurrently herewith and its attached exhibits ("Exs. 1-7") and such other argument and materials as may be presented before this motion is taken under submission. Defendants request that the Court dismiss the Complaint in its entirety with prejudice and enter judgment in Defendants' favor on each of Plaintiffs' claims.

## ISSUES TO BE DECIDED

1. **No Loss Causation.** Whether Plaintiffs' claim under Section 10(b) of the Securities Exchange Act of 1934 should be dismissed given Plaintiffs' failure to plead loss causation.

2. **No Strong Inference Of Scienter**. Whether Plaintiffs' Section 10(b) claim should be dismissed for the additional, independent reason that Plaintiffs have failed to plead particularized facts giving rise to a "strong inference" that any Defendant made any challenged statement with scienter.

3. **No Materially Misleading Statement**. Whether Plaintiffs' Section 10(b) claim should be dismissed for the additional, independent reason that Plaintiffs have failed to plead with particularity that any Defendant made a materially false or misleading statement.

4. **No Control-Person Liability**. Whether Plaintiffs' control-person claims under Section 20(a) of the Exchange Act should be dismissed on the ground that Plaintiffs have failed to plead a predicate violation of the securities laws.

1   DATED: September 12, 2025

2                                  Respectfully submitted,

3                                  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4                                  By: _____ */s/ Mark R.S. Foster*_____
                                            Mark R.S. Foster
5
                                   *Attorney for Defendants*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS ....................................................... i

TABLE OF AUTHORITIES ............................................................................................... iv

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

      A.    Visa's Business and the Regulatory Environment ........................................ 3

      B.    DOJ Investigation and DOJ Allegations ...................................................... 3

      C.    Plaintiffs' Securities Fraud Claims .............................................................. 4

ARGUMENT ...................................................................................................................... 6

    I.      PLAINTIFFS MUST MEET FORMIDABLE PLEADING STANDARDS.............. 6

    II.     PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ................................. 6

      A.    Plaintiffs Fail to Show Any Fraud Was Revealed ........................................ 8

      B.    The Quick and Sustained Recovery Refutes Any Inference of Loss
          Causation........................................................................................................ 13

    III.    PLAINTIFFS ALSO FAIL TO PLEAD A "STRONG INFERENCE" OF
         SCIENTER .................................................................................................. 16

      A.    The Lack of an Alleged Motive Negates Scienter ....................................... 16

      B.    Plaintiffs' Allegations Do Not Give Rise to Any Inference of Scienter........ 17

          1.    The FE allegations provide no basis for inferring scienter .............. 17

          2.    Plaintiffs do not get a free pass under the core-operations
              inference........................................................................................ 17

      C.    Holistically, the Inferences of Scienter Are Weak ....................................... 19

    IV.    PLAINTIFFS ALSO FAIL TO PLEAD ANY STATEMENT WAS
         MISLEADING.............................................................................................. 20

      A.    The Challenged Statements Are Incapable of Objective Verification.......... 21

      B.    Plaintiffs Have Not Alleged an Actionable Omission in Any Event ........... 22

    V.      PLAINTIFFS' SECTION 20(A) ALSO FAILS....................................... 25

CONCLUSION.................................................................................................... 25

DEFENDANTS' MOTION TO DISMISS AMENDED      Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bajjuri v. Raytheon Technologies Corp.*,
   No. CV-20-00468-TUC-JCH, 2023 WL 3650554 (D. Ariz. May 25, 2023) ...................... 14

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................................................ 23

*Berson v. Applied Signal Technology, Inc.*
   527 F.3d 982 (9th Cir. 2008) .............................................................................................. 19

*Bhangal v. Hawaiian Electric Industries, Inc.*,
   No. 23-cv-04332-JSC, 2024 WL 4505465 (N.D. Cal. Oct. 15, 2024) ................................ 20

*In re BofI Holding, Inc. Securities Litigation*,
   977 F.3d 781 (9th Cir. 2020) ........................................................................................ 10, 12

*Brody v. Transitional Hospitals Corp.*,
   280 F.3d 997 (9th Cir. 2002) ......................................................................................... 2, 23

*Curry v. Yelp Inc.*,
   875 F.3d 1219 (9th Cir. 2017) ......................................................................... 7, 10, 11, 13, 25

*Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.*,
   709 F. Supp. 3d 1217 (D. Nev. 2024) ................................................................................ 14

*Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
   856 F.3d 605 (9th Cir. 2017) ........................................................................................ 24, 25

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................................... 1, 7, 16

*In re Eargo, Inc. Securities Litigation*,
   656 F. Supp. 3d 928 (N.D. Cal. 2023) ............................................................................... 25

*In re First American Financial Corp.*,
   No. CV 20-9781 DSF (Ex), 2021 WL 4807648 (C.D. Cal. Sept. 22, 2021) ...................... 24

*In re Herbal Life Ltd. Securities Litigation*,
   No. CV 14–2850 DSF (JCGx), 2015 WL 1245191 (C.D. Cal. Mar. 16, 2015) ................. 11

*Huang v. Higgins*,
   No. 17-cv-04830-JST, 2019 WL 1245136 (N.D. Cal. Mar. 18, 2019) ................................ 10

*Jedrzejczyk v. Skillz Inc.*,
   No. 21-cv-03450-RS, 2023 WL 2333891 (N.D. Cal. Mar. 1, 2023), *aff'd*,
   No. 23-15493, 2024 WL 1635568 (9th Cir. Apr. 16, 2024) ............................................... 14

iv

*Kauffman v. Natural Health Trends Corp.*,
No. CV 19-163-MWF (JPRx), 2019 WL 7165921 (C.D. Cal. Dec. 20, 2019) ................... 24

*Kessman v. Myriad Genetics, Inc.*,
No. 2:18-CV-00336-DAK, 2019 WL 1330363 (D. Utah Mar. 25, 2019) ........................... 11

*Lechner v. Infusystem Holdings, Inc.*,
No. 2:16-cv-08295-ODW(AGRx), 2017 WL 11593803 (C.D. Cal. Dec. 15, 2017)........... 11

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ......................................................................... 25

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) .................................................................... passim

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ........................................................................................ 23

*In re Maxim Integrated Products, Inc. Securities Litigation*,
639 F. Supp. 2d 1038 (N.D. Cal. 2009) ............................................................ 11

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ................................................................. passim

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) .................................................................. 9, 15

*Nguyen v. Endologix*,
962 F.3d 405 (9th Cir. 2020) ................................................................. 17, 20

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
774 F.3d 598 (9th Cir. 2014) .................................................................. passim

*Paddock v. DreamWorks Animations SKG, Inc.*,
No. CV 14-06053 SJO (Ex), 2015 WL 12711653 (C.D. Cal. Apr. 1, 2015), *aff'd sub
nom. Roofers Local No. 149 Pension Fund v. DreamWorks Animations SKG, Inc.*,
677 F. App'x 376 (9th Cir. 2017) ........................................................... 11

*In re PayPal Holdings, Inc. v. Shareholder Derivative Litigation*,
No. 17-cv-00162-RS, 2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ...................... 24

*Pirani v. Netflix, Inc.*,
No. 22-cv-02672-JST, 2024 WL 4894291 (N.D. Cal. Nov. 26, 2024)................. 25

*In re Pivotal Securities Litigation*,
No. 3:19-cv-03589-CRB, 2020 WL 4193384 (N.D. Cal. July 21, 2020)........................... 25

*Police Retirement System of Street Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ........................................................... 17, 18, 19

v

DEFENDANTS' MOTION TO DISMISS AMENDED                    Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

*Prodanova v. H.C. Wainwright & Co.*,
　　993 F.3d 1097 (9th Cir. 2021) ...................................................................... 16, 17

*Ramos v. Comerica Inc.*,
　　No. 2:23-cv-06843-SB-JPR, 2024 WL 2104398 (C.D. Cal. Apr. 12, 2024) ....................... 14

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
　　697 F.3d 869 (9th Cir. 2012) ............................................................................. 16

*Ronconi v. Larkin*,
　　253 F.3d 423 (9th Cir. 2001) ..................................................................... 6, 17, 20

*Sigman v. Nuscale Power Corp.*,
　　No. 3:23-cv-01689-IM, No. 3:23-cv-01956-IM, 2025 WL 1455432 (D. Or. May 21,
　　2025) ................................................................................................................ 25

*In re Silicon Graphics Inc. Securities Litigation*,
　　183 F.3d 970 (9th Cir. 1999) ................................................................................. 6

*In re Sorrento Therapeutics, Inc. Securities Litigation*,
　　97 F.4th 634 (9th Cir. 2024) ................................................................................ 20

*South Ferry LP, No. 2 v. Killinger*,
　　542 F.3d 776 (9th Cir. 2008) ................................................................................ 18

*Stephens v. Maplebear Inc.*,
　　No. 5:24-cv-00465-EJD, 2025 WL 1359125 (N.D. Cal. May 9, 2025) ........................ 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　　551 U.S. 319 (2007) ...................................................................................... 16, 19

*Veal v. LendingClub Corp.*,
　　423 F. Supp. 3d 785 (N.D. Cal. 2019) ................................................................. 24

*Webb v. Solarcity Corp.*,
　　884 F.3d 844 (9th Cir. 2018) ................................................................................ 16

*Weston Family Partnership LLLP v. Twitter, Inc.*,
　　29 F.4th 611 (9th Cir. 2022) ................................................................................ 20

*Wochos v. Tesla, Inc.*,
　　985 F.3d 1180 (9th Cir. 2021) ........................................................... 1, 7, 13, 14, 25

*Zucco Partners, LLC v. Digimarc Corp.*,
　　552 F.3d 981 (9th Cir. 2009) ........................................................... 16, 17, 18, 19

**STATUTES**

15 U.S.C. § 78u-4(b)(4) ........................................................................................... 7

vi

# REGULATIONS

17 C.F.R. § 240.10b–5(b) ................................................................................. 23

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

**INTRODUCTION**

After the Department of Justice ("DOJ") filed a complaint against Visa alleging antitrust violations (the "DOJ Complaint"), Plaintiffs brought this tagalong securities class action. Plaintiffs' core theory is that Visa misled its investors by attributing the company's success to the "capabilities and functionality" of its network, while allegedly omitting that Visa's business depended on the supposedly anticompetitive tactics such as "Cliff Pricing" and exclusivity incentives that the DOJ has challenged. Plaintiffs' claim is nothing more than a repackaging and relabeling of the DOJ's unproven antitrust allegations as securities fraud.

Congress enacted the Private Securities Litigation Reform Act ("PSLRA" or the "Reform Act") to prevent opportunistic lawsuits of this kind. Here, Plaintiffs' Complaint does not come close to meeting the Reform Act's heightened pleading standards. Under controlling Ninth Circuit precedent—including *Apollo*, *Brody*, *Immersion*, *Intuitive Surgical*, *Metzler*, *Tesla*, *Webb*, and *Zucco*—this action should be dismissed given Plaintiffs' failure to plead three elements of their claim: loss causation, scienter, and falsity.

***First***, Plaintiffs fail to plead loss causation. Plaintiffs are required to show that Visa's stock price "fell significantly after the truth became known." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Here, the "truth" that Plaintiffs point to is the filing of the DOJ Complaint. The DOJ Complaint did not reveal any truth. At most, it is the very type of "an ominous event," the Ninth Circuit explained, that "simply puts investors on notice of a *potential* future disclosure of fraudulent conduct." *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014). Accordingly, any stock-price decline "can only be attributed to market speculation about whether fraud has occurred." *Id.* "This type of speculation cannot form the basis of a viable loss causation theory." *Id.*

Further, Visa's stock price dipped 6.6% after news of the DOJ Complaint on September 25, 2024, and then increased after two trading days. The "quick and sustained price recovery" after the "modest" stock drop "refutes the inference that the alleged concealment . . . caused any material drop in the stock price." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021). This, too, is fatal.

DEFENDANTS' MOTION TO DISMISS AMENDED    Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

***Second***, Plaintiffs also fail to plead particularized facts giving rise to a "strong inference" of scienter. The Reform Act requires particularized facts showing that each defendant acted with intent to deceive, manipulate, or defraud. Here, Plaintiffs offer no motive for fraud, no allegations of insider trading, and no facts showing that any individual defendant knew facts directly contradicting their challenged statements. Plaintiffs point to no witness statements, no internal documents, and provide nothing showing that Defendants knew their statements were false when made. At most, Plaintiffs allege that Defendants spoke about and knew about Visa's business. In other words, they were doing their jobs. For good reason, the Ninth Circuit has repeatedly held that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008). Plaintiffs do not plead anything like that here.

***Third***, Plaintiffs also fail to plead the falsity of any statement. Plaintiffs challenge statements like, "We feel that across our fraud mitigation capabilities and protections, our dual message capabilities, our securities and reliability, dispute resolution, trust, brand protection et cetera, we feel that we are very well in this world, as we did when the Durbin amendments first came out over a decade ago." In *Apollo*, the Ninth Circuit confronted similar statements describing the defendant's offering. The challenged statements were held not actionable because they were "vague," "subjective," and "provided nothing concrete upon which [the Plaintiffs] could rely." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc*., 774 F.3d 598, 606 (9th Cir. 2014) (alteration in original) (citation omitted). As in *Apollo*, the statements here are not actionable because they are not capable of "objective verification." *Id.*

In any case, the challenged statements did not address Visa's contractual practices, pricing, or incentives. Under the Ninth Circuit's decisions in *Brody* and *Metzler*, Visa had no duty to disclose the practices that the DOJ now claims are anticompetitive because it did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT

Case No. 5:24-cv-08220-NW

**BACKGROUND**

**A.    Visa's Business and the Regulatory Environment**

Visa's stock trades on the New York Stock Exchange under the ticker symbol "V." (Compl. ¶ 30.)   Visa operates one of the world's largest electronic payments networks, processing and facilitating payment transactions for businesses and consumers, including debit transactions.  (¶ 43.) Visa does not issue debit cards itself; rather, it contracts with card-issuing banks ("Issuers") to issue cards that use its network and with merchant banks ("Acquirers") to enable merchants to accept those cards.  (¶ 4.)

Consumers can make payments with an ever-expanding array of payment methods, including cash, check, credit cards, debit cards, interbank transfers, and digital wallets, most of which can be used in person or online.  The DOJ's allegations focus on the debit market, which allows a consumer to pay for goods or services by transferring funds directly from the consumer's bank account, as opposed to another funding source.

In 2010, Congress passed the "Durbin Amendment."   (¶ 8.)   The Federal Reserve's implementing rule, "Regulation II," required that each debit card be enabled with at least two unaffiliated networks—typically, Visa or Mastercard on the front, and a "Back-of-Card Network" (such as Maestro or a PIN network) on the back.  (¶¶ 8, 63-64.)  In October 2022, the Federal Reserve adopted the "Regulation II Clarification," which mandated that the unaffiliated network also be enabled for Card-Not-Present transactions, effective July 1, 2023.  (¶¶ 9, 65.)

**B.    DOJ Investigation and DOJ Allegations**

The DOJ began investigating Visa's debit practices in March 2021.  (Compl. ¶¶ 14, 76.)  Visa disclosed this investigation in its SEC filings.  (¶¶ 209-211.)

On September 23, 2024, news outlets, including Bloomberg and Politico, reported that the DOJ was preparing to file an antitrust suit against Visa.  (¶ 176.)

On September 24, 2024, the New York Times reported on the impending suit, and the DOJ Complaint was filed that same day.  (¶¶ 177-178.)  Following these disclosures, Visa's stock price fell $15.85 per share (approximately 5.5%) from $288.63 on September 23, 2024, to $272.78 on

3

September 24, 2024, and then fell another $3.15 to $269.63 on September 25, 2024, for a total two-day decline of approximately 6.6%. (¶¶ 23, 179.) The stock then went up after two trading days, and steadily recovered. (*See* Ex. 1; Charts 1 and 2 on page 15 *infra.*.)

The DOJ Complaint alleges that Visa had used its market power to thwart the intent of the Durbin Amendment and Regulation II Clarification. (Compl. ¶¶ 14, 78.) The DOJ Complaint alleges that Visa's response to the Durbin Amendment and Regulation II Clarification was to exploit the existence of "Non-Contestable Transactions"—transactions that, for technical or contractual reasons, could only be routed over Visa's network. (¶¶ 15, 80.) Visa allegedly used the threat of imposing artificially high "Rack Rates" on these transactions to pressure merchants and Acquirers into routing nearly all eligible debit transactions through Visa, even when alternative networks offered lower fees. (¶¶ 16-17, 82-84.) Allegedly, this "Cliff Pricing" structure meant that if a merchant or Acquirer failed to meet Visa's volume thresholds, Visa would impose the high Rack Rate on all transactions, making it uneconomical to use alternative networks. (¶¶ 17, 83-84.) The DOJ further alleged that Visa's contracts included early termination fees, clawback provisions, and other penalties to enforce these de facto exclusive arrangements. (¶¶ 88, 105-108.)

The DOJ Complaint also alleges that Visa pressured Issuers to limit the enablement of alternative networks and to avoid enabling features (such as PINless routing) that would make it easier for merchants to use non-Visa networks. (¶¶ 18, 92-101.) These tactics, according to the DOJ, were a direct response to the regulatory changes and were designed to "lock up" routing volume and foreclose competition. (¶¶ 102-04.) The DOJ Complaint further alleges that Visa used its leverage to prevent fintech companies from developing competing payment networks, including by threatening high fees and paying Apple hundreds of millions of dollars on the condition that Apple would not develop a competing product. (¶¶ 22, 109-123.)

Notwithstanding that the DOJ has merely filed a Complaint, Plaintiffs here label the DOJ's allegations as "findings," as if the DOJ was plaintiff, judge, and jury. (*E.g.*, ¶¶ 14, 78, 107.)

**C.    Plaintiffs' Securities Fraud Claims**

On November 20, 2024, this action was commenced. On July 15, 2025, Plaintiffs filed the

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

1  Complaint purportedly on behalf of all persons or entities who purchased or otherwise acquired

2  publicly traded Visa securities between March 2, 2023, and September 23, 2024 (the "Class Period").

3      The Complaint names as defendants Visa and the following individuals (the "Individual

4  Defendants"):  Ryan McInerney (Chief Executive Officer), Chris Suh (Chief Financial Officer),

5  Vasant Prabhu (former Vice Chairman & CFO), Alfred F. Kelly, Jr. (former CEO and Chairman),

6  Peter Andreski (Global Corporate Controller and Chief Accounting Officer), Oliver Jenkyn (Group

7  President), and Jack Forestell (Chief Product and Strategy Officer).  (¶¶ 31-37.)  Collectively, Visa

8  and the Individual Defendants are referred to as "Defendants."

9      The Complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act

10  of 1934 and Rule 10b-5.  (¶¶ 233-238.)  The Complaint challenges more than twenty statements

11  made by Defendants during earnings calls, investor conferences, and in public filings.  (¶¶ 127-175.)

12      Plaintiffs' core theory is that Defendants misled investors by allegedly downplaying the

13  Regulation II Clarification on Visa's debit processing business and by attributing Visa's continued

14  success to the "capabilities and functionality" of its network, such as fraud mitigation, dual

15  messaging, and reliability.  (¶¶ 69, 129-132, 134-35, 137-39, 143-46, 148-152, 155-58, 161-62.)

16  According to Plaintiffs, the challenged statements were misleading because they allegedly omitted

17  that Visa's actual strategy relied on the anticompetitive tactics alleged by the DOJ—specifically,

18  Cliff Pricing, exclusivity incentives, and related contractual practices—that made it uneconomical

19  for merchants and Acquirers to use alternative networks.  Plaintiffs allege that these omissions

20  rendered Defendants' statements materially misleading and artificially inflated Visa's stock price.

21  (¶¶ 1, 24, 128, 131, 133, 135, 139, 141, 145, 147, 150, 152, 154, 156, 158, 162, 169, 175, 223-238.)

22      In support of its allegations, the Complaint draws almost exclusively from the DOJ

23  Complaint.  (¶¶ 76-123 (parroting DOJ allegations); ¶ 128, 131, 133, 135, 139, 141, 145, 147, 150,

24  152, 154, 156, 158, 162, 169, 175 (claiming challenged statements are false in light of ¶¶ 76-123).)

25  Given that Plaintiffs have not independently corroborated the DOJ's unproven allegations,

26  Defendants have concurrently moved to strike the allegations from the Complaint, which do not

27  plead securities fraud in any case, even if accepted as true and not stricken.

28

DEFENDANTS' MOTION TO DISMISS AMENDED            Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

Plaintiffs cite a few statements from Former Employee 1 ("FE-1") who served as a Senior Contract Analyst at Visa from August 2021 to July 2023. (¶ 105.) According to FE-1, it was "routine" practice for Visa to structure contracts with both Acquirer and Issuer banks to include exclusivity and volume incentives, as well as "Cliff Pricing" provisions that set rates based on transaction volume thresholds, and clawback provisions allowing Visa to recoup incentives if usage targets were not met. (¶¶ 106-08.) FE-1 does not identify any specific contracts, the number of contracts with such terms, any specific contractual terms, any specific customers, or any revenue impacts (not a single dollar) associated with these practices. FE-1 is not alleged to have interacted with any of the Individual Defendants.

## ARGUMENT

## I. PLAINTIFFS MUST MEET FORMIDABLE PLEADING STANDARDS

Congress enacted the Reform Act "to deter opportunistic private plaintiffs from filing abusive securities fraud claims," specifically, "by raising the pleading standards for private securities fraud plaintiffs." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999). Congress was concerned that securities claims "can extort a great deal of undeserved settlement money if the courts do not filter out the unfounded ones early enough to avoid huge litigation expenses." *Ronconi v. Larkin*, 253 F.3d 423, 428 (9th Cir. 2001). Thus, Plaintiffs' Section 10(b) claim must satisfy the Reform Act's "formidable pleading requirements" to avoid dismissal under FRCP 12(b)(6). *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). The well-established law requires Plaintiffs to allege that Defendants made (A) a material misstatement or omission (B) with scienter, that (C) caused Plaintiffs' losses. *See id.* at 1061. Plaintiffs have failed to adequately plead any of these elements, let alone each of them. This brief addresses the Complaint's multiple elemental failings in the sequence that the Ninth Circuit addressed similar failings in *Metzler*.

## II. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

The Complaint should be dismissed because Plaintiffs have not pled loss causation. Loss causation is the "causal connection between the [defendant's] material misrepresentation and the

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
Case No. 5:24-cv-08220-NW

1  [plaintiff's] loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). A plaintiff must show

2  that the relevant stock's price "fell significantly after the truth became known." *Id.* at 347.

3      When Congress enacted the Reform Act, it codified a plaintiff's burden of demonstrating loss

4  causation. 15 U.S.C. § 78u-4(b)(4). The Ninth Circuit has ruled that a plaintiff's loss causation

5  allegations must satisfy the "heightened pleading standards" of Rule 9(b), as "[l]oss causation is part

6  of the 'circumstances' constituting fraud because, without it, a claim of securities fraud does not

7  exist." *Apollo*, 774 F.3d at 605.

8      Pleading loss causation requires a complaint to "demonstrate a causal connection between

9  the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the

10  plaintiff." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017). Because loss causation is

11  "context dependent," a plaintiff must trace an alleged loss back to "the very facts about which the

12  defendant lied." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021) (quoting *Mineworkers'*

13  *Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 753 (9th Cir. 2018)).

14      The Complaint's loss causation allegations are set forth in a handful of paragraphs. (¶¶ 176-

15  80.) The Complaint alleges that on the evening of September 23, 2024, news outlets including

16  Bloomberg and Politico reported that the DOJ was preparing to file an antitrust lawsuit against Visa.

17  (¶ 176.) It was reported that the DOJ was "preparing to accuse Visa of taking steps to keep rivals

18  from challenging its dominance in the debit card market" and that its "allegations include that Visa

19  made exclusive agreements to hinder the expansion of competing networks and thwarted efforts by

20  technology companies to enter the market." (¶ 176.) The following morning, the New York Times

21  reported that "the center of the lawsuit is payment processing technology, which connects a bank to

22  a merchant whenever a purchase is made," and that the DOJ planned "to argue that Visa punishes

23  customers, including merchants, when they try to use competing services to process payments," and

24  that "[p]rosecutors are also expected to say that Visa coerces financial technology firms to work with

25  it by threatening penalties on those who do not, and thus squeezing out potential new competitors."

26  (¶ 177.)

27

28

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

1    The next day, September 24, the DOJ filed its complaint. (¶ 178.) Visa's stock price fell

2    $15.85 per share, or approximately 5.5%, from $288.63 at the close on September 23, 2024, to

3    $269.63 per share on September 25, 2024, for a total two-day decline of approximately 6.6%.

4    (¶ 179.) Visa's stock price promptly increased after two trading days and had a sustained recovery

5    in the weeks and months that followed. (*See* Ex. 1 and Charts 1 & 2 on page 15 *infra*.)

6    The Complaint's loss causation allegations fail for two independent, related reasons:

7    (A) neither news about the DOJ "preparing to accuse," "argue," "say," nor the DOJ alleging antitrust

8    claims against Visa are revelations of fraud under a string of controlling Ninth Circuit cases and

9    (B) the modest stock drop following that news, followed by a "quick, and sustained recovery" negate

10   any inference that Visa's stock price "fell significantly after the truth became known."

11   ### A.    Plaintiffs Fail to Show Any Fraud Was Revealed

12   Plaintiffs' loss causation allegations fail in the first instance because the DOJ's complaint

13   does not constitute a revelation of fraud. A string of controlling, on-point Ninth Circuit decisions

14   have affirmed dismissal of securities fraud claims that asserted loss causation allegations like those

15   asserted here. Start with the Ninth Circuit's decision in *Metzler*, 540 F.3d at 1063. There, the

16   Financial Times reported that the Department of Education was investigating Corinthian College's

17   campus and sanctioned the school after finding that its officials had helped students manipulate

18   financial aid documents. *Id.* Corinthian's stock price declined and investors brought suit alleging

19   loss causation based on the news story. The Ninth Circuit pointed out that the Financial Times story

20   allegedly revealed "the *potential* but real *risk* of all 88 [of Corinthian's] colleges being placed on

21   reimbursement status, which would have delayed Title IV funding and increased accounts receivable

22   by up to $135 million company-wide." *Id.* But controlling precedent, the court explained, does not

23   "support the notion that loss causation is pled where a defendant's disclosure reveals a 'risk' or

24   'potential' for widespread fraudulent conduct." *Id.* at 1064.

25   The Ninth Circuit followed *Metzler* in affirming dismissal in *Loos v. Immersion Corp.*, 762

26   F.3d 880, 890 (9th Cir. 2014). There, Immersion announced an investigation was underway into its

27   revenue recognition practices. *Id.* at 885. Its stock price immediately fell by 23%. *Id.* The plaintiffs

28

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

alleged that the announcement of the investigation "completed the revelation of fraud to the market and removed all inflation from the company's stock price." *Id.* at 887. The court agreed with the district court that the loss causation allegations were insufficient. The court applied *Metzler*'s teaching that a "mere 'risk' or 'potential' for fraud is insufficient to establish loss causation.'" *Id.* at 889 (quoting *Metzler*, 540 F.3d at 1064.) The court also drew upon the Eleventh Circuit's decision in *Meyer v. Greene*, 710 F.3d 1189, 1192-93 (11th Cir. 2013). In that case, a company's stock price dropped 7% following news of an informal inquiry by the SEC into the company's real estate practices. *Id.* at 889. With respect to the SEC investigation, the Ninth Circuit observed:

> [T]he court reasoned that there had been no "revelation" of a prior false statement to the market: . . . . The announcement of an investigation reveals just that—an investigation—and nothing more. To be sure, stock prices may fall upon the announcement of an SEC investigation, but that is because the investigation can be seen to portend an added *risk* of future corrective action. That does not mean that the investigations, in and of themselves, reveal to the market that a company's previous statements were false or fraudulent.

*Loos*, 762 F.3d at 889-90 (quoting *Meyer*, 710 F.3d at 1201). Following *Meyer*, the Ninth Circuit explained in *Loos* that the "announcement of an investigation does not 'reveal' fraudulent practices to the market. . . . While the disclosure of an investigation is certainly an ominous event, it simply puts investors on notice of a *potential* future disclosure of fraudulent conduct." *Id.* at 890. The court concluded, "any decline in a corporation's share price following the announcement of an investigation can only be attributed to market speculation about whether fraud has occurred. This type of speculation cannot form the basis of a viable loss causation theory." *Id.*

Next, in *Apollo*, plaintiffs alleged loss causation based on a press release disclosing "that a review by the Department of Education had 'expressed a concern that some students enroll and begin attending classes before completely understanding the implications of enrollment, including their eligibility for student financial aid.'" 774 F.3d at 608. The Ninth Circuit affirmed dismissal, relying on *Loos*. It held that the Department of Education's expression of concerns did not plead loss causation. The court explained: "It is unclear what claims made by the Defendants were invalidated by this statement. An expression of concern, moreover, does not constitute a corrective disclosure

DEFENDANTS' MOTION TO DISMISS AMENDED                Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

1   and a public admission of Apollo's alleged fraud." *Id.* This did not "'reveal fraudulent practices to

2   the market' and therefore is insufficient to establish loss causation." *Id.*

3          In *Curry v. Yelp*, the plaintiffs alleged that Yelp misrepresented the authenticity of its online

4   reviews, claiming that the reviews were "firsthand" and "authentic," while in reality Yelp allegedly

5   manipulated reviews based on whether businesses purchased advertising. 875 F.3d at 1222. To

6   show loss causation, the plaintiffs pointed to a Wall Street Journal article reporting that the Federal

7   Trade Commission had disclosed over 2,000 complaints from businesses alleging Yelp manipulated

8   reviews. *Id.* The Ninth Circuit rejected the loss causation allegations, affirming dismissal. The

9   court's analysis began with the rule from *Metzler* and *Loos* that the "mere 'risk' or 'potential' for

10  fraud is insufficient to establish loss causation." *Id.* at 1225. The court explained: "Several cases

11  from the United States Supreme Court and [this] court make clear that in the context of alleged

12  securities fraud where the PSLRA and FRCP 9(b) impose heightened requirements, the element of

13  loss causation cannot be adequately made out merely by resting on a number of customer complaints

14  and asserting that where there is smoke, there must be fire." *Id.* (citing cases). The court concluded

15  that "disclosure of customer complaints that refer to allegations of fraud, without more, are

16  insufficient to allege loss causation." *Id.* at 1226.

17         This case here also contrasts with *In re BofI Holding, Inc. Securities Litigation*, 977 F.3d 781

18  (9th Cir. 2020). There, the court held that "allegations in a lawsuit do not provide definitive

19  confirmation that fraud occurred." *Id.* at 792. In that case, the court found loss causation adequately

20  pled by reference to allegations in a complaint, unlike here, filed by a whistleblower who was a

21  "former insider of the company who had personal knowledge of the facts he alleged," and which

22  resulted in a 30% drop in the company's stock price, a fact that suggested that the "the market

23  regarded his factual allegations as credible and acted upon them on the assumption that they were

24  true." *Id.* at 792-93.

25         Applying these same principles, multiple district courts in this circuit dismiss securities fraud

26  claims with similarly defective loss causation allegations. *See Huang v. Higgins*, 2019 WL 1245136,

27  at *1, *18 n.12 (N.D. Cal. Mar. 18, 2019) (holding disclosures of "additional lawsuits and

28

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

investigations" could "establish loss causation"); *Paddock v. DreamWorks Animations SKG, Inc.*, 2015 WL 12711653, at *1 (C.D. Cal. Apr. 1, 2015), *aff'd sub nom. Roofers Loc. No. 149 Pension Fund v. DreamWorks Animations SKG, Inc.*, 677 F. App'x 376 (9th Cir. 2017); *In re Herbal Life Ltd. Sec. Litig.*, 2015 WL 1245191, at *2, *6 (C.D. Cal. Mar. 16, 2015) (holding that regulatory investigations by the FTC, DOJ, FBI, and Canadian regulators into the company's business practices did not reveal to the market the pertinent truth of anything, and therefore does not qualify as a corrective disclosure.)[1]

Here, as in *Metzler*, *Loos*, *Apollo*, *Curry*, and other on-point district court cases, the Complaint's loss causation theory is predicated not on a corrective disclosure of actual fraud, but on news reports and government action that merely suggest the possibility of wrongdoing.  The cited news articles (¶¶ 176-77) do not reveal any admission or legal finding that any of the challenged statements at issue in this case were false or misleading when made.  Rather, they report that the DOJ was "preparing to accuse" Visa and "planned to argue" certain theories in an impending lawsuit.  As the Ninth Circuit has repeatedly held, such reports of anticipated legal action—no matter how ominous—do not constitute a revelation of fraud.

The Complaint's reliance on the DOJ's allegations as a corrective disclosure is foreclosed by *Apollo* and *Curry*.  In *Apollo*, the Ninth Circuit made clear that even a government agency's "expression of concern" about a company's practices does not "constitute a corrective disclosure and a public admission of [the company's] alleged fraud."  774 F.3d at 608.  Similarly, in *Curry,* the court held that the federal government's disclosure of customer complaints and regulatory attention, without more, is insufficient to plead loss causation.  875 F.3d at 1225.  Here, the DOJ's Complaint is just that—an allegation—not a finding, adjudication, or admission of wrongdoing.  The Complaint

---

[1] *Accord Lechner v. Infusystem Holdings, Inc.*, 2017 WL 11593803, at *10 (C.D. Cal. Dec. 15, 2017) (disclosure of investigation failed to plead loss causation); *Kessman v. Myriad Genetics, Inc.*, 2019 WL 1330363, at *10 (D. Utah  Mar. 25, 2019) (applying *Loos* in holding that the issuance of subpoena did not show loss causation); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp. 2d 1038, 1046-47 (N.D. Cal. 2009) (disclosures regarding compliance with SEC investigation, subpoenas from US Attorney's Office, and formation of special committee held not to be corrective).

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

1  does not allege that Visa admitted to any of the DOJ's claims, nor does it identify any

2  contemporaneous disclosure of facts that would have revealed any alleged fraud to the market.

3      The Complaint's own allegations confirm this deficiency.  The cited paragraphs (¶¶ 176-80),

4  show that the stock price decline followed the news of the DOJ's impending lawsuit and the filing

5  of the complaint, not the disclosure of any new, company-specific facts demonstrating the falsity of

6  Visa's prior statements.  The Complaint does not point to any stock analysts (or any other source)

7  that reported that any of Visa's prior statements were fraudulent in light of the DOJ Complaint.  The

8  Complaint's allegations therefore fail to satisfy Plaintiffs' burden of pleading a "causal connection

9  between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered

10  by the plaintiff." *Curry*, 875 F.3d at 1225.  This failure alone is fatal and supports dismissal.

11      Further, what analysts said in response to news of the DOJ Complaint undercuts any idea that

12  the market regarded allegations as credible.  *Cf. BofI*, 977 F.3d at 792-93.  Far from questioning the

13  superiority of Visa's product offering after the DOJ Complaint was filed, one analyst observed that

14  "V's network is generally superior to regionals on acceptance, fraud & auth rates" (Ex. 2 [Cowen

15  9.25.24])—issues at the core of Plaintiffs' fraud claim—that were not called into question by the

16  filing of the DOJ's complaint.  Stock analysts recognized that the litigation was "complex" and likely

17  to entail a "multi-year process," including appeals.[2]  And the analysts did not characterize the DOJ

18  Complaint as a revelation of wrongdoing, let alone fraud.  Rather, they questioned the viability of

19  the DOJ's claims.  Consider these analysts' observations:

20  • TD Cowen wrote:  "We do not view this as a slam dunk for the Justice Department…."
21    (Ex. 2 (TD Cowen 9.25.24).)

22  • Wolfe Research observed that its "checks continue to suggest that material market share
      alone may not qualify as breaking antitrust laws unless achieved through anti-competitive
      practices, and some of the below callouts such as bundled offerings and volume-based
23    pricing are often normal practices in other industries."  (Ex. 3 [Wolfe 9.24.24.])

24  • Jeffries echoed that sentiment:  "We have a hard time seeing volume-based pricing as
      truly anti-competitive, but like most other regulatory issues that pop up in the US, the
25    lawsuit acts as a near-term overhang."  (Ex. 4 [Jeffries 9/25/24].)

26

27

28  [2] Ex. 2 (TD Cowen 9.25.24); Ex. 6 (Compass Point 9.24.24); Ex. 7 (Morgan Stanley 9.25.24).

12

DEFENDANTS' MOTION TO DISMISS AMENDED                Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

- Barclays observed: "we will not know for some time whether the DOJ ends up prevailing in its legal action against V….V's business practices do not seem to be considered intrinsically illegal by the DOJ—except in their furtherance of V's purported monopoly." (Ex. 5.[Barclays 9.26.24].)

The analyst reports confirm that the market was not assuming the DOJ Complaint was viable, let alone a revelation of fraud. As in *Curry*, the DOJ Complaint's allegations of wrongdoing here are "insufficient to allege loss causation." 875 F.3d at 1226. At best, the stock-price decline after the announcement of the DOJ Complaint "can only be attributed to market speculation about whether fraud has occurred. This type of speculation cannot form the basis of a viable loss causation theory." *Loos*, 762 F.3d at 890. The Complaint does not allege that the price drop was caused by the market learning the "very facts about which the defendant lied," as required by *Tesla*, 985 F.3d at 1197 (citation omitted). Dismissal with prejudice is warranted under these controlling cases.

### B.  The Quick and Sustained Recovery Refutes Any Inference of Loss Causation

Plaintiffs' loss causation allegations also fail for an additional, related reason: Visa's stock-price decline was modest, and the stock price recovered quickly. Because the loss causation analysis is "contextual," the Ninth Circuit has repeatedly held that "where, for example, a 'modest' drop in the stock price coincides with the disclosure of certain news but then 'recover[s]' very shortly after,'" the allegation of loss causation may be insufficient. *Id.* (alteration in original) (quoting *Metzler*, 540 F.3d at 1064). In *Metzler*, the Ninth Circuit held that loss causation was not established by a 10% stock-price decline following the Financial Times reporting the Department of Education investigation. *Metzler*, 540 F.3d at 1063. Although Corinthian College's stock price dipped by approximately 10%, it "rebounded" within several trading days and soon exceeded the earlier price. *See also Loos*, 762 F.3d at 889 (observing the recovery in *Metzler* as reason loss causation was not adequately pled).

In *Tesla*, the company's stock price declined by approximately 4% in the wake of the Wall Street Journal article on Friday, October 6, 2017 "after market hours," questioning the company's statements about automatic production having begun in August 2017. 985 F.3d at 1198. The court observed that "Tesla's stock price, which had closed at $356.88 on October 6, closed at $342.94 on

13

DEFENDANTS' MOTION TO DISMISS AMENDED                    Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

the next trading day, October 9.  However, the stock price immediately rebounded, closing at $355.59 on October 10 and trading between $350 and $360 over the next week." *Id.*  After examining this stock price history, the Ninth Circuit applied *Metzler* to hold that the "quick and sustained price recovery after the modest October 9 drop refutes the inference that the alleged concealment of this particular fact [regarding car production] caused any material drop in the stock price." *Id.* (citing *Metzler*, 540 F.3d at 1064-65; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010)).

Several district courts in this Circuit have applied *Tesla* and *Metzler* to dismiss cases on this ground.  *See, e.g.*, *Ramos v. Comerica Inc.*, 2024 WL 2104398, at *4 (C.D. Cal. Apr. 12, 2024) (dismissing complaint in light of "'modest' price drop" of 7.4% followed by immediate and "sustained" recovery over subsequent three months (citation omitted)); *Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *17 (D. Ariz. May 25, 2023) ("[T]he quick and sustained recovery here continues to negate an inference of loss causation . . . ."); *Jedrzejczyk v. Skillz Inc.*, 2023 WL 2333891, at *5 (N.D. Cal. Mar. 1, 2023) (rejecting loss causation allegations in face of prompt stock rebound), *aff'd*, 2024 WL 1635568 (9th Cir. Apr. 16, 2024); *Daniels Fam. 2001 Revocable Tr. v. Las Vegas Sands Corp.*, 709 F. Supp. 3d 1217, 1238 (D. Nev. 2024) (loss causation allegations inadequate in face of modest stock drop and prompt rebound).

Here, as in the foregoing cases, Visa's stock had a "modest" decline following the news reports and filing of the DOJ Complaint.  As the Complaint alleges, Visa's stock price fell 6.6% over two trading days after the DOJ Complaint was filed.  (¶¶ 178, 179.)  Plaintiffs ignore what happened next.  Within a couple of days of that modest stock drop, Visa's stock price, like in *Tesla*, "immediately rebounded" with a "quick and sustained price recovery."  985 F.3d at 1198.  By September 27, within two trading days, the stock price started a steady rebound and exceeded the price on September 23 within a few weeks, and continued to climb as illustrated in Charts 1 and 2:

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT

Case No. 5:24-cv-08220-NW

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21    The stock-price charts in Charts 1 and 2 are not Rorschach tests.  They show that Visa's stock

22  drop was temporary and hardly significant in the context of the Class Period or in the immediate

23  wake of the reports about the DOJ Complaint.  As in *Tesla*, the "quick and sustained price recovery

24  after the modest [stock] drop refutes the inference that the alleged [fraud] caused any material drop

25  in the stock price." *Id.*  At most the modest stock drop "portend[ed] an added *risk* of future corrective

26  action," but did not "reveal to the market that [Visa's] previous statements were false or fraudulent."

27  *Loos*, 762 F.3d at 890 (quoting *Meyer*, 710 F.3d at 1201).

28
15

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

1    The Complaint here therefore fails to show that Visa's stock price "fell significantly after the

2    truth became known." *Dura*, 544 U.S. at 347.  The Supreme Court's loss causation rule exists to

3    prevent "a plaintiff 'with a largely groundless claim to simply take up the time of a number of other

4    people, with the right to do so representing an in terrorem increment of the settlement value, rather

5    than a reasonably founded hope that the [discovery] process will reveal relevant evidence.'" *Id.*

6    (alteration in original) (citation omitted).  To allow cases to go forward where there is not an adequate

7    showing of loss causation, as here, "would tend to transform a private securities action into a partial

8    downside insurance policy." *Id.* at 347-48.  Hewing to *Dura*, this Court should not allow that here.

9    **III.    PLAINTIFFS ALSO FAIL TO PLEAD A "STRONG INFERENCE" OF SCIENTER**

10    Plaintiffs' claim fails for a second reason:  it does not plead "with particularity facts giving

11    rise to a strong inference that the defendant[s] acted with" scienter—"a mental state embracing intent

12    to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 319, 319-

13    21 (2007).  "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter,

14    the court must take into account plausible opposing inferences." *Id.* at 323.  Courts will compare

15    "malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow

16    the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as

17    any opposing innocent inference." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th

18    Cir. 2009).  For corporate scienter, Plaintiffs' allegations must show that the Individual Defendants

19    acted with scienter.  *Apollo*, 774 F.3d at 607.

20    **A.    The Lack of an Alleged Motive Negates Scienter**

21    Plaintiffs' Complaint is devoid of any alleged motive for Defendants to commit securities

22    fraud.  A "lack of a plausible motive certainly makes it much less likely that a plaintiff can show a

23    strong inference of scienter." *Prodanova v. H.C. Wainwright & Co*., 993 F.3d 1097, 1108 (9th Cir.

24    2021).  Here, Plaintiffs do not allege that the Individual Defendants sold any stock (let alone engaged

25    in suspicious trading) during the Class Period, through which they "would have benefited from

26    any . . . fraudulent statements," therefore undermining any inference of scienter.  *See In re Rigel*

27    *Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012); *Webb v. Solarcity Corp.*, 884 F.3d

28

16

844, 856 (9th Cir. 2018) ("[A] lack of stock sales can detract from a scienter finding."); *Ronconi*, 253 F.3d at 436 (holding no strong inference of scienter when the knowledgeable insiders did not sell stock at a time that would have exploited the allegedly fraudulent statements).  The absence of a motive here strongly negates any scienter inference.

### B.   Plaintiffs' Allegations Do Not Give Rise to Any Inference of Scienter

The Reform Act's "strong inference" requirement is an "'exacting' pleading obligation" that "has teeth" and "present[s] no small hurdle for the securities fraud plaintiff."  *Nguyen v. Endologix*, 962 F.3d 405, 414 (9th Cir. 2020) (alteration in original) (citation omitted).  "Only where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness will [courts] overlook the failure to allege a plausible motive" for securities fraud.  *Prodanova*, 993 F.3d at 1108.  Plaintiffs' allegations do not overcome the lack of motive here.

#### 1.   The FE allegations provide no basis for inferring scienter

When a complaint relies on an account of a former employee ("FE"), as Plaintiffs do here, the FE's allegations must be based on the FE's "personal knowledge" and "and described with particularity" in order to be indicative of scienter.  *Zucco*, 552 F.3d at 995.

Here, Plaintiffs rely on the account of a single former employee, ("FE-1").  (¶¶ 105-08.)  FE-1, however, says nothing about what the Individual Defendants knew, and therefore "lack[s] first hand knowledge regarding what the individual defendants knew or did not know."  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014); *see also Zucco*, 552 F.3d at 995-96 (discounting allegations from confidential witness who lacked direct contact with defendants).  FE-1 thus contributes nothing to the scienter analysis.

#### 2.   Plaintiffs do not get a free pass under the core-operations inference

Plaintiffs' primary scienter theory is that the Individual Defendants must have known their statements were false because the subject matter at issue was "core" to the company's business.  (¶¶ 205-07.)  But "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud."  *Metzler*, 540 F.3d at 1068.  The

DEFENDANTS' MOTION TO DISMISS AMENDED   Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

Reform Act's heightened pleading standard, requiring that a party "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" would lose its intended effect if simply noting that the executives discussed a topic was enough. *Apollo*, 774 F.3d at 604. Plaintiffs plead no specific information relayed to Defendants, let alone any related to the alleged fraud.

The only exception to this rule is the core operations inference, which is "not easy" to establish. *Intuitive Surgical* 759 F.3d at 1062. Cases that successfully invoke the core operations theory, without more (as here), are "exceedingly rare." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008). Plaintiffs must show that this is one of the "rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 786.

The Ninth Circuit has articulated three circumstances in which core operations allegations may support a strong inference of scienter: (a) in combination with other particularized allegations; (b) where the allegations are particular and suggest that defendants had actual access to the disputed information; and (c) in exceedingly rare cases, where the nature of the relevant fact is so prominent that it would be "absurd" to suggest that management was without knowledge of the matter. *Intuitive Surgical*, 759 F.3d at 1062-63 (citing *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008)); *Zucco*, 552 F.3d at 1000.

Plaintiffs do not allege any facts in "combination with other particularized allegations," so they cannot succeed under the core-operations inference under the first circumstance.

Plaintiffs try the second circumstance, relying on the importance of debit transactions to Visa's business and the fact that the Individual Defendants discussed Regulation II and related topics on earnings calls and at investor conferences. (¶¶ 69-70, 127-162.) These allegations may support an inference that the Individual Defendants had knowledge of Visa's core operations and had opinions about Visa's business. That supports one inference: that they were doing their jobs. Those are not facts from which the Court can draw any inference, much less a "strong inference," that any Defendant intended to mislead investors.

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

In *Zucco*, the court held that "allegations that senior management . . . closely reviewed the accounting numbers . . . and that top executives had several meetings in which they discussed quarterly inventory numbers" are "not enough to satisfy the narrow exception" of the core operations test. 552 F.3d at 1000. In *Intuitive Surgical*, the Ninth Circuit rejected the core operations inference where the complaint alleged that the defendants were familiar with the company's core business and with the contents of certain reports because they were discussed in meetings. 759 F.3d at 1062. Stating that executives pay attention to a business and know important facts about a business "[a]t best . . . support[s] a 'mere inference of [the defendant's] knowledge of all core operations,' not scienter." *Id.* (citation omitted). These holdings apply with equal force here.

Finally, the "absurdity" prong of the core operations test is reserved for the rare case when the alleged facts are so central and so widely known within the company that it would be "absurd" to suggest that management was unaware. *Id.* at 1063. For example, in *Berson v. Applied Signal Technology, Inc.*, the court found it was absurd to suggest that executives, who had a direct role in the company's day-to-day operations, were unaware of a stop-work order that allegedly halted tens of millions of dollars of work and rendered the facilities a "ghost town." 527 F.3d 982, 988 n.5 (9th Cir. 2008).

This case is nothing like *Berson*. Plaintiffs do not allege any event, much less one of the magnitude or direct impact as the stop-work orders in *Berson*. Instead, Plaintiffs rely on the general importance of debit transactions and the fact that executives discussed Regulation II in public forums. (¶¶ 126-62, 202-07.) The Ninth Circuit has repeatedly found these types of allegations insufficient to satisfy the "absurdity" prong. *Metzler*, 540 F.3d at 1068; *Apollo*, 774 F.3d at 608; *Zucco*, 552 F.3d at 1000-01.

## C.    Holistically, the Inferences of Scienter Are Weak

In the holistic analysis mandated by *Tellabs*, Plaintiffs do not allege any facts giving rise to any inference of scienter, much less a "strong" one. 551 U.S. at 326. Plaintiffs have not pointed to any witness testimony about what Defendants knew, let alone any particularized or contemporaneous facts contradicting anything any of them said. Plaintiffs do not point to any internal reports.

DEFENDANTS' MOTION TO DISMISS AMENDED                    Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

1  Plaintiffs have not alleged a motive.  Nor have Plaintiffs plead any facts showing why successive

2  CEOs and CFOs, along with other executives, would conspire to do fraud that Plaintiffs posit.  *See*

3  *Bhangal v. Hawaiian Elec. Indus., Inc.*, 2024 WL 4505465, at \*16 (N.D. Cal. Oct. 15, 2024)

4  (dismissing claim where complaint failed to explain why CEO "would continue a fraudulent scheme

5  initiated by his predecessor to the CEO role" and why CFO "would continue a fraudulent scheme

6  initiated by his predecessor to the CFO role").  Plaintiffs also acknowledge that Defendants disclosed

7  the DOJ investigation over a year before the DOJ Complaint was filed, stating that the DOJ was

8  "seeking documents and information regarding a potential violation of Section 1 or 2 of the Sherman

9  Act, 15 U.S.C. §§ 1, 2," and that its request "focuses on U.S. debit and competition with other

10  payment methods and networks."  (¶¶ 209-11.)  This transparent disclosure belies any inference that

11  Defendants were trying to hide the fact that the government was scrutinizing Visa's business.  Why

12  would Defendants risk their reputations, livelihoods, or potential ruinous liability?  Where, as here,

13  there is no good answer and a fraud theory "does not make a whole lot of sense," dismissal logically

14  follows.  *Endologix*, 962 F.3d at 415.

15  **IV.    PLAINTIFFS ALSO FAIL TO PLEAD ANY STATEMENT WAS MISLEADING**

16        The Complaint should also be dismissed because Plaintiffs fail to plead falsity.  Plaintiffs

17  have not plead with particularity "contemporaneous statements or conditions" showing the "false or

18  misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432.  "The PSLRA has

19  exacting requirements for pleading 'falsity.'" *Metzler*, 540 F.3d at 1070.  For a statement to be false

20  or misleading, "it must 'directly contradict what the defendant knew at that time'" or "omit material

21  information." *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) (citation

22  omitted).  Courts examine each statement "in context" and give it a "fair reading." *In re Sorrento*

23  *Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024).

24        Plaintiffs do not challenge the accuracy of Visa's financial statements, its reported revenues,

25  or anything quantifiable or concrete.  Rather, the Complaint alleges Visa's executives spoke about

26  its superior network, but failed to disclose the supposedly concealed, "true" reasons for Visa's

27  success –namely, the practices at issue in the DOJ Complaint, including the use of Cliff Pricing,

28
20

exclusivity incentives, and other contractual provisions and financial incentives to prevent the development of competing products. (¶¶ 128, 131, 133, 135, 139, 141, 145, 147, 150, 152, 154, 156, 158, 162, 163, 166 169, 175.) Plaintiffs' allegations do not pass muster.

### A.    The Challenged Statements Are Incapable of Objective Verification

To be misleading, a statement must be "capable of objective verification." *Apollo*, 774 F.3d at 606. In *Apollo*, the Ninth Circuit explained: "We distinguish 'puffing' from misrepresentation. 'Puffing' concerns expressions of opinion, as opposed to knowingly false statements of fact." *Id.* The court went on, "When valuing corporations, investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers. This mildly optimistic, subjective assessment hardly amounts to a securities violation." *Id.* (quoting *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010)).

Applying this rule, the Ninth Circuit held that the plaintiffs in that case challenged "inherently subjective 'puffing' statements." *Id.* Apollo had stated "[w]e believe that our track record for enrollment and revenue growth is attributable to our offering comprehensive services combining quality educational content, teaching resources and customer service with formats that are accessible and easy to use for students as well as our corporate clients." *Id.* (alteration in original). Those statements, the Ninth Circuit explained, "are vague and do not set out with specificity the reasons for its enrollment and revenue growth." *Id.* The challenged words "provided nothing concrete upon which [the Plaintiffs] could rely." *Id.* (alteration in original) (citation omitted). In finding that the statements were not actionable misrepresentations, the court observed that many of the statements "were subjective and preceded by qualifiers, such as 'We believe.'" *Id.* at 607.

The same is true here. Plaintiffs do not challenge Visa's reported financial results. Nor its projections. Nor any other concrete, verifiable statement. Instead, as in *Apollo*, most of the challenged statements address Defendants' subjective beliefs about its product capabilities and many of the challenged statements are preceded by qualifiers such as "we believe" or "we feel" or "we think." For example, Plaintiffs challenge statements like:

- "We feel that across our fraud mitigation capabilities and protections, our dual message capabilities, our security and reliability, dispute resolution, trust, brand protections et

21

---

DEFENDANTS' MOTION TO DISMISS AMENDED                Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

cetera.  We feel that we are very well in this world, as we did when [the] Durbin amendment first came out over a decade ago." (¶ 127);

- "We continue to believe that merchants are going to want to choose to route transactions to Visa for a number of reasons.  One is, in the e-comm space the merchants bear the liability for fraud in e-commerce.  So the ability to save a couple of basis points in cost have to be weighed against the risk that comes from the liability of fraud in the e-commerce space." (¶ 130);

- "[W]e like our chances to continue to win." (¶ 130);

- ***"We feel good about our ability to compete . . . .*** [based on conversations with customers about Visa's capabilities]." (¶ 144);

- "Visa has invested significantly in fraud detection, authorization, tokenization, like all the things that give us a material step function advantage in that particular space to minimize the liability that merchants may incur.  And hence, when you sort of look at the totality of things, we're confident that Visa's value prop is very good." (¶ 146);

- "And so we feel good about Reg II.  We feel good about our ability to operate in that regulatory environment.  Remember, we've been operating under sort of Durbin 1 since 2011.  It's been over a decade and we've learned how to navigate in that environment." (¶ 153); and

- ***"We feel great about the capabilities."*** (¶ 161.)

The other challenged statements likewise reflect beliefs (i.e., subjective feelings, thoughts, impressions, and perceptions) about Visa's product features, capabilities, and competitive advantages in the marketplace.  (¶¶ 132, 134, 138, 140, 149, 155, 157, 165.)  Like the challenged statements in *Apollo*, these are "subjective" and "vague" statements that do not offer anything else "concrete" that can be proven "objectively false."  774 F.3d 606.  This is fatal and reason enough to dismiss the Complaint, as in *Apollo*.

### B.    Plaintiffs Have Not Alleged an Actionable Omission in Any Event

Plaintiffs have not alleged that Defendants had a duty to disclose any allegedly omitted information in any event.  Plaintiffs claim that all of the challenged statements were misleading for failure to disclose that its business strategy relied on allegedly anticompetitive tactics—specifically, Cliff Pricing, exclusivity incentives, and related contractual practices—that made it uneconomical for merchants and Acquirers to use alternative networks.  Plaintiffs allege that these omissions rendered Defendants' statements materially misleading and artificially inflated Visa's stock price. (¶¶ 1, 24, 128, 131, 133, 135, 139, 141, 145, 147, 150, 152, 154, 156, 158, 162, 169, 175, 223-238.)

22

1    Even assuming the truth of these allegations, there was no duty to disclose them.

2         Absent a duty to disclose, an omission does not give rise to a cause of action.  *Basic Inc. v.*

3    *Levinson*, 485 U.S. 224, 239 n.17 (1988).  "[Section] 10(b) and Rule 10b–5(b) do not create an

4    affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*,

5    563 U.S. 27, 44 (2011).  An actionable omission claim arises only when disclosure is "necessary . . .

6    to make the statements made, in light of the circumstances under which they were made, not

7    misleading."  17 C.F.R. § 240.10b–5(b).  This requires defendants' statements to "affirmatively

8    create an impression of a state of affairs that differs in a material way from the one that actually

9    exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

10         In *Brody*, the court applied this rule to hold that the company's failure to disclose ongoing

11   merger negotiations did not render its statements about a stock repurchase misleading, because the

12   company "neither stated nor implied anything regarding a merger." *Id.* at 1006.  The court explained

13   that there was no affirmative misstatement or impression created that would require disclosure of the

14   omitted information about the ongoing merger negotiations. *Id.*

15         In *Metzler*, the Ninth Circuit criticized a complaint similar to the one here.  The court

16   observed that the complaint there "sets forth a considerable number of alleged false statements," but

17   its "explanation of how and why the statements were false is decidedly vague." *Metzler*, 540 F.3d

18   at 1070.  The complaint alleged that defendants' myriad statements were all "false because they

19   'create the false impression that defendants ran their business with proper financial reporting

20   compliance with student enrollment and federal loan practices which were critical to the viability of

21   the business[.]'" *Id.*  The court explained:  "this Circuit has consistently held that the PSLRA's

22   falsity requirement is not satisfied by conclusory allegations that a company's class period statements

23   regarding its financial well-being are *per se* false based on the plaintiff's allegations of fraud

24   generally." *Id.*  There was no duty to disclose the unlawful business practices subject to government

25   enforcement, observing that the complaint "does not connect the DOE or California Attorney General

26   investigations to any false or misleading statement—*i.e.*, some affirmative statement or omission by

27   Corinthian that suggested it was not under any regulatory scrutiny." *Id.* at 1071.

28

23

DEFENDANTS' MOTION TO DISMISS AMENDED          Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

1       The same is true here.  None of the challenged statements discuss Visa's contractual practices,

2  its pricing, or its incentives for customers.  There was no duty to disclose allegedly unlawful practices

3  here, just as there was no duty to disclose merger negotiations when discussing a share repurchase

4  in *Brody*, and no duty to disclose supposedly unlawful practices subject to government investigation

5  in *Metzler*.  As in *Metzler*, the Complaint is fatally flawed because its "explanation of how and why

6  the statements were false is decidedly vague."  540 F.3d at 1070.  Merely alleging that all of the

7  challenged statements are false in light of the alleged (but unadjudicated) claims of anticompetitive

8  activity is similar to the "conclusory allegations that a company's class period statements regarding

9  its financial well-being are *per se* false based on the plaintiff's allegations of fraud generally," that

10 the Ninth Circuit found inadequate.  *Id.*

11      At most, Plaintiffs have seized upon the DOJ's allegations of wrongdoing and asserted that

12 all of Defendants' statements were false in light of those unproven allegations.  Courts routinely

13 reject claims like this:  "companies are not required to engage in 'self-flagellation' by disclosing

14 unproven allegations" of wrongdoing.  *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D.

15 Cal. 2019) (citation omitted); *In re PayPal Holdings, Inc. S'holder Derivative Litig.*, 2018 WL

16 466527, at *3 (N.D. Cal. Jan. 18, 2018) (same); *In re First Am. Fin. Corp.*, 2021 WL 4807648, at

17 *10 (C.D. Cal. Sept. 22, 2021); *Kauffman v. Nat. Health Trends Corp.*, 2019 WL 7165921, at *6

18 (C.D. Cal. Dec. 20, 2019) ("[T]he case law establishes that knowledge of illegal practices is not

19 enough to trigger a disclosure obligation, and there is nothing in the FAC which would suggest

20 anyone at NHTC knew losses would result from the Pyramid Law violation.").  This Court should

21 too.

22      Plaintiffs' omission claim fails for an additional reason.  Most of the challenged statements

23 articulate statements of belief and are prefaced with words like "We believe," or "we feel," [similar].

24 (¶¶ 127, 130, 138, 140, 144, 149, 153, 157, 161, 165.)  Even if considered actionable (they are not),

25 when statements of belief are challenged as being misleading by omission, a plaintiff must allege

26 "facts going to the basis for [defendant's] opinion. . . . whose omission makes the opinion statement

27 at issue misleading to a reasonable person reading the statement fairly and in context."  *Dearborn*

28

DEFENDANTS' MOTION TO DISMISS AMENDED              Case No. 5:24-cv-08220-NW
CLASS ACTION COMPLAINT

1    *Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017)

2    (citation omitted).  The "Supreme Court cautioned that pleading falsity under an omissions theory

3    would be 'no small task for an investor'" under this test.  *Id.* at 615 (quoting *Omnicare, Inc. v.*

4    *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015)).

5          Here, Plaintiffs plead no facts "going to the basis" of the challenged statements of belief.  The

6    failure to allege such facts is fatal to pleading an omissions claim here.  *Id.*  Courts routinely dismiss

7    claims where, as here, complaints fail to allege facts going to the basis of a defendant's opinion and

8    how the opinion was formed.  *E.g.*, *Pirani v. Netflix, Inc.*, 2024 WL 4894291, at *8 (N.D. Cal.

9    Nov. 26, 2024); *In re Eargo, Inc. Sec. Litig.*, 656 F. Supp. 3d 928, 940 (N.D. Cal. 2023); *In re Pivotal*

10   *Sec. Litig.*, 2020 WL 4193384, at *14 (N.D. Cal. July 21, 2020); *Stephens v. Maplebear Inc.*, 2025

11   WL 1359125, at *6 (N.D. Cal. May 9, 2025); *Sigman v. Nuscale Power Corp.*, 2025 WL 1455432,

12   at *13 (D. Or. May 21, 2025).  This Court should too.

13   **V.    PLAINTIFFS' SECTION 20(A) ALSO FAILS**

14         "[T]o prevail on their claims for violations of § 20(a) . . . plaintiffs must first allege a violation

15   of § 10(b) . . . ."  *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002).  For the

16   reasons discussed above, Plaintiffs have not pled a section 10(b) violation, and so their section 20(a)

17   claim must also be dismissed.  *See id.*; *Apollo*, 774 F.3d at 610.

18                                  <u>**CONCLUSION**</u>

19         For all these reasons, this action should be dismissed.  Plaintiffs' failure to plead loss

20   causation supports dismissal with prejudice as multiple Ninth Circuit cases have held.  *Wochos*, 985

21   F.3d at 1198; *Apollo*, 774 F.3d at 608-09, *Curry*, 875 F.3d at 1225; *Metzler* 540 F.3d at 1065.

22   DATED:  September 12, 2025            Respectfully submitted,
23

24                                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

25                                       By: _____*/s/ Mark R.S. Foster*_____

26                                       *Attorneys for Defendants*
                                         Visa Inc., Ryan McInerney,
27                                       Chris Suh, Vasant Prabhu, Alfred F. Kelly, Jr.,
                                         Peter Andreski, Oliver Jenkyn, and Jack Forestell
28                                                        25