MARK R.S. FOSTER (SBN 223682)
mark.foster@skadden.com
BONIFACIO C. SISON (SBN 335484)
bonifacio.sison@skadden.com
MADISON M. FLOWERS (SBN 345759)
madison.flowers@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Attorneys for Defendants*
*Visa Inc., Ryan McInerney,*
*Chris Suh, Vasant Prabhu, Alfred F. Kelly, Jr.,*
*Peter Andreski, Oliver Jenkyn, and Jack Forestell*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BEIBEI CAI, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VISA INC, RYAN MCINERNEY, CHRIS SUH, VASANT PRABHU, ALFRED F. KELLY, JR., PETER ANDRESKI, OLIVER JENKYN, and JACK FORESTELL, <br><br> Defendants. | Case No. 5:24-cv-08220-NW <br><br> **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** <br><br> Date: December 17, 2025 <br> Time: 9:00 a.m. <br> Court: Courtroom 3, 5th Floor <br> Judge: Hon. Noël Wise |

DEFENDANTS' REPLY ISO MTD    Case No. 5:24-cv-08220-NW

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................................ii

INTRODUCTION ..............................................................................................................1

ARGUMENT ......................................................................................................................2

    I.     PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ..............................................2

         A.    Plaintiffs Fail to Show Any "Truth Became Known".....................................2

         B.    Plaintiffs Point to A Modest Stock Drop That Rebounded ............................5

    II.    PLAINTIFFS ALSO FAIL TO PLEAD A "STRONG INFERENCE" OF SCIENTER ............................................................................................................7

         A.    The Lack of a Plausible Motive Negates Scienter .........................................7

         B.    Speaking About A Subject Does Not Support Any Scienter Inference...........8

         C.    Holistically, the Inferences of Scienter Are Weak ........................................10

    III.    PLAINTIFFS ALSO FAIL TO PLEAD ANY STATEMENT WAS MISLEADING..............................................................................................11

         A.    The Challenged Statements Are Incapable of Objective Verification...........11

         B.    Plaintiffs Have Not Alleged an Actionable Omission in Any Event ............12

CONCLUSION...................................................................................................................15

DEFENDANTS' REPLY ISO MTD             Case No. 5:24-cv-08220-NW

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Action AG v. China N.E. Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012)................................................................................................. 7

*In re Apollo Group, Inc. Sec. Litigation*,
  No. CV-10-1735-PHX-JAT, 2012 WL 2376378 (D. Ariz. June 22, 2012), *aff'd sub
  nom.*, 774 F.3d 598 (9th Cir. 2014)................................................................................... 12

*In re Apple Inc. Securities Litigation*,
  No. 19-CV-02033-YGR, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020).............................. 10

*Azar v. Yelp, Inc.*,
  No. 18-CV-00400-EMC, 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ........................... 14

*Bajjuri v. Raytheon Techs. Corp.*,
  2023 WL 3650554 (D. Ariz. May 25, 2023) ........................................................................ 7

*Barnes v. Edison International*,
  No. CV 18-09690, 2021 WL 2325060 (C.D. Cal. Apr. 17, 2021), *aff'd*, No. 21-55589,
  2022 WL 822191 (Mar. 18, 2022) ..................................................................................... 11

*Berson v. Applied Signal Technology, Inc.*,
  527 F.3d 982 (9th Cir. 2008) ....................................................................................... 9, 15

*In re BofI Holding, Inc. Securities Litigation*,
  977 F.3d 781 (9th Cir. 2020) .............................................................................. 1, 3, 4, 6

*Brody v. Transitional Hospitals Corp.*,
  280 F.3d 997 (9th Cir. 2002) ..................................................................................... 14, 15

*Curry v. Yelp*,
  875 F.3d 1219 (9th Cir. 2017) ............................................................................. 1, 3, 4, 15

*In re Cutera Securities Litigation*,
  610 F.3d 1103 (9th Cir. 2010) .......................................................................................... 11

*Daniels Family 2001 Revocable Tr. v. Las Vegas Sands Corp.*,
  709 F. Supp. 3d 1217 (D. Nev. 2024).............................................................................. 6, 7

*Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technologies, Inc.*,
  856 F.3d 605 (9th Cir. 2017) ............................................................................................ 13

*Donley v. Live Nation Entertainment, Inc.*,
  No. CV 23-6343-KK-ASX, 2024 WL 794641 (C.D. Cal. Feb 23, 2024) .......................... 1, 8

ii

DEFENDANTS' REPLY ISO MTD                                    Case No. 5:24-cv-08220-NW

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ......................................................................................................... 2, 5

*In re Eargo, Inc. Securities Litigation*,
    656 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................................. 13

*Ferris v. Wynn Resorts Ltd.*,
    462 F. Supp. 3d 1101 (D. Nev. 2020) .................................................................................. 15

*Glazer Capital Management, L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) ............................................................................................... 12

*Hable v. Godenzi*,
    No. 2:22-CV-02012-GMN-BNW, 2023 WL 8653185 (D. Nev. 12, 2023) ............................ 7

*Henryhand v. Dorel Juvenile Group, Inc.*,
    No. CV1700180SJOAGRX, 2017 WL 7806622 (C.D. Cal. Aug. 9, 2017) ........................... 14

*Jedrzejczyk v. Skillz Inc.*,
    No. 21-CV-03450-RS, 2023 WL 2333891 (N.D. Cal. Mar. 1, 2023), *aff'd*, No. 23-
    15493, 2024 WL 1635568 (9th Cir. Apr. 16, 2024) .............................................................. 7

*Joyce v. Amazon.com, Inc.*,
    No. 2:22-CV-00617, 2023 WL 8370101 (W.D. Wash. Dec. 4, 2023) ............................... 8, 9

*Lew v. ON Semiconductor Corp.*,
    No. CV-24-00594-PHX-SMB, 2025 WL 1918543 (D. Ariz. July 11, 2025) ........................ 12

*Lloyd v. CVB Financial Corp.*,
    811 F.3d 1200 (9th Cir. 2016) .............................................................................................. 5

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014) ............................................................................................ 2, 6

*Macomb County Employees' Retirement System v. Align Technologies, Inc.*,
    39 F.4th 1092 (9th Cir. 2022) ............................................................................................. 12

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024) ........................................................................................................... 14

*In re Mattel, Inc. Securities Litigation*,
    No. 219CV10860MCSPLA, 2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) ........................... 4

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................... 1, 2, 3, 4, 6, 7, 9, 15

*Monroe County Employees' Retirement System v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019) ........................................................................................... 7

iii

*Nathanson v. Polycom, Inc.*,
    87 F. Supp. 3d 966 (N.D. Cal. 2015) ................................................................................. 6

*In re NVIDIA Corp. Securities Litigation*,
    768 F.3d 1046 (9th Cir. 2014) .......................................................................................... 8

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015) ................................................................................................. 12, 13

*Oregon Public Employees Reporter Fund v. Apollo Group Inc.*,
    774 F.3d 598 (9th Cir. 2014) ......................................................... 2, 3, 11, 12, 14, 15

*Petrie v. Electronic Game Card, Inc.*,
    308 F.R.D. 336 (C.D. Cal. 2015) ..................................................................................... 7

*Pirani v. Netflix, Inc.*,
    No. 22-CV-02672-JST, 2024 WL 4894291 (N.D. Cal. Nov. 26, 2024) .............................. 13

*In re Pivotal Securities Litigation*,
    No. 3:19-CV-03589-CRB, 2020 WL 4193384 (N.D. Cal. July 21, 2020) .......................... 13

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ....................................................................... 9, 11, 14, 15

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021) ................................................................................ 7, 8, 9

*Pujo v. EHang Holdings Ltd.*,
    No. 2:23-CV-10165 MWC (DFMx), 2025 WL 1242324 (C.D. Cal. Mar. 26, 2025) ............ 7

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) ..................................................................................... 9, 10

*Ramos v. Comerica Inc.*,
    No. 2:23-CV-06843-SB-JPR, 2024 WL 2104398 (C.D. Cal. Apr. 12, 2024) ........................ 7

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ........................................................................................... 1

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
    697 F.3d 869 (9th Cir. 2012) ....................................................................................... 1, 8

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ......................................................................................... 15

*S. Ferry, LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ........................................................................................... 9

iv

*Sigman v. Nuscale Power Corp.*,
    3:23-cv-01689-IM and 3:23-cv-01956-IM, 2025 WL 1455432 (D. Or. May 21, 2025)...... 13

*Stephens v. Maplebear Inc.*,
    No. 5:24-CV-00465-EJD, 2025 WL 1359125 (N.D. Cal. May 9, 2025).............................. 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................. 7, 10

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) .............................................................. 10

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ....................................................... 1, 5, 6, 7, 11, 15

*In re Vantive Corp. Securities Litigation*,
    283 F.3d 1079 (9th Cir. 2002) .................................................................. 15

*In re VeriFone Holdings, Inc. Securities Litigation*,
    704 F.3d 694 (9th Cir. 2012) ..................................................................... 10

*Webb v. Solarcity Co.*,
    884 F.3d 844 (9th Cir. 2018) ............................................................... 1, 7, 8

*In re Wells Fargo & Co. Shareholder Derivative Litigation*,
    282 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................... 10

*Weston Family Partnership LLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) ................................................................... 9, 11

*In re Yahoo! Inc. Sec. Litigation*,
    No. C 11-02732 CRB, 2012 WL 3282819 (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F.
    App'x 387 (9th Cir. 2015) ........................................................................ 14

DEFENDANTS' REPLY ISO MTD                                    Case No. 5:24-cv-08220-NW

**INTRODUCTION**

An alleged antitrust violation is not securities fraud. Because the elements of the claims do not line up, it is not surprising that Plaintiffs' recycling of the DOJ's allegations does not satisfy the Reform Act's formidable standards for pleading securities fraud. Nothing in the Opposition overcomes Defendants' showing that the Complaint fails to plead loss causation, a "strong inference" of scienter, or any statement that was materially misleading. Each failing is independently fatal.

On loss causation, the Opposition argues that *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020) held that allegations from a complaint in another case can establish loss causation. *BofI* actually held that such allegations could show loss causation "if the market treats allegations in a lawsuit as sufficiently credible to be acted upon as truth." *Id*. at 792. The court found that a whistleblower's complaint was sufficient because the allegations were from a "former insider of the company who had personal knowledge of the facts he alleged." *Id*. at 793. The Ninth Circuit contrasted that result with its *Curry* decision where unsubstantiated consumer complaints were not based on "personal knowledge of the facts. . . alleged" and thus did not establish loss causation. *Id*. This case is like *Curry* because the DOJ's allegations are not from a knowledgeable insider. Further, Plaintiffs do not plead any facts showing the market treated the allegations as credible. To the contrary, analysts expressed doubt about the DOJ's case and doubled-down on their favorable views on Visa's product offerings. Plus, unlike in *BofI*, where the stock plunged 30%, Visa's stock declined 6%, an indisputably modest amount, before rebounding and experiencing a sustained recovery. Not only does this show that the market did not credit the DOJ's allegations, it provides an additional ground for dismissal under the Ninth Circuit's decisions in *Tesla* and *Metzler*.

On scienter, Plaintiffs' arguments are even more obviously deficient. They ignore the Ninth Circuit cases (e.g., *Webb*, *Rigel*, and *Ronconi*) that hold that the absence of any stock sales or benefit negate scienter. Without a plausible motive, Plaintiffs invent one, saying Defendants wanted to lie in the face of the DOJ's investigation. Not only is that conclusory allegation unsupported and illogical, the one case Plaintiffs cite for that point (*Donley*) is distinguishable because a consent decree had been in place, it was violated multiple times, and a defendant sold $250 million in stock before the investigation of continuing violations was disclosed at the class period's end. Here, there

1

are no stock sales and no consent decree violations, and Visa disclosed the DOJ's investigation before and throughout the Class Period. Lacking any facts bearing on Defendants' state of mind, Plaintiffs argue that Defendants' speaking about Visa's capabilities and the Regulation II clarification establishes their scienter. Their argument would eviscerate the scienter element and the Reform Act's heightened standards for pleading it. For good reason, that is not the law. Plaintiffs' meritless legal argument highlights the Complaint's lack of facts giving rise to any inference of scienter.

On falsity, Defendants showed that the challenged statements are inactionable puffery. Plaintiffs' lead argument is to say that is a "factual" issue, while ignoring multiple Ninth Circuit decisions that routinely affirm dismissal on this ground. Plaintiffs brush off the Ninth Circuit's *Apollo* decision which involved similar statements about a product offering, similar allegations of falsity predicated on allegedly illegal business practices, and a holding that the statements are not actionable, as this Court should do here. Even if the statements are actionable (they are not), Plaintiffs do not plead any facts going to the basis of Defendants' opinions, any objectively false statement, or a duty to disclose the practices at issue, three additional grounds for dismissal.

## ARGUMENT

### I.     PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Plaintiffs ignore the Supreme Court's *Dura* decision, which requires them to plead that Visa's stock price "fell significantly after the truth became known." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005); (MTD 1.) The Opposition does not overcome Defendants' showing that the Complaint's loss causation allegations fail for two independent, related reasons: (A) Plaintiffs do not plead facts showing the "truth became known" and (B) the stock decline following the news of the DOJ Complaint was "modest," not significant, as shown by the "quick, and sustained recovery." (MTD 8.) Controlling, on-point Ninth Circuit decisions support dismissal on both grounds.

### A.     Plaintiffs Fail to Show Any "Truth Became Known"

The Motion showed that multiple Ninth Circuit decisions have held that loss causation is not sufficiently pleaded based on government enforcement activity or unsubstantiated allegations of wrongdoing. These cases hold that the "mere 'risk' or potential' for fraud is insufficient to establish loss causation.'" *Loos v. Immersion Corp.*, 762 F.3d 880, 889 (9th Cir. 2014); *Metzler Investment*

2

*GMBH v. Corinthian Colleges, Inc*, 540 F.3d at 1049, 1064 (9th Cir. 2008); *Oregon Public Employees Reporter Fund v. Apollo Group Inc.*, 774 F.3d 598, 608 (9th Cir. 2014); *Curry v. Yelp*, 875 F.3d 1219, 1222; (MTD 8-13.)

The Opposition ignores the legal holdings from these cases to point out that some of those cases (but not all) involved announcements of government investigations. (Opp. 22.) Plaintiffs assert that those cases "did not reveal to the market any *facts* that could call into question the veracity of any prior statements." (*Id*. at 28.) Plaintiffs' own argument highlights what is missing. Plaintiffs do not point to any "facts." They point to *allegations* in the DOJ Complaint. Allegations are not facts. Those allegations did not reveal "truth."

That is why this case is like *Apollo*, where the Department of Education had "expressed concern that some students enroll and begin attending classes before completely understanding the implications of enrollment, including their eligibility for student financial aid." 774 F.3d at 608. Though that was the government's contention, the Ninth Circuit did not construe those government contentions as "facts" that revealed the "truth."

That is why this case is also like *Curry*. There, the Federal Trade Commission disclosed over 2,000 complaints about Yelp's alleged manipulation of its reviews. Again, the Ninth Circuit did not construe those complaints as facts, let alone revelations of "truth." *Curry*, 875 F.3d at 1222. The court explained that "disclosure of customer complaints that refer to allegations of fraud, without more, are insufficient to allege loss causation." *Id* at 1226. Likewise, "without more," the DOJ Complaint's allegations of wrongdoing here do not show loss causation.

The Opposition counters with *BofI*, 977 F.3d at 792 (Opp. 21.) *BofI* highlights what Plaintiffs' allegations lack. As the Motion showed, *BofI* held that "allegations in a lawsuit do not provide definitive confirmation that fraud occurred." *Id*.; (MTD 10.) The Ninth Circuit explained: "What matters for loss causation purposes 'is that some [representations] are more credible than others and thus more likely to be acted upon as truth.'" *Id.* at 792 (alterations in original) (citation omitted). The court went on: "If the market treats allegations in a lawsuit as sufficiently credible to be acted upon as truth, and the inflation in the stock price attributable to the defendant's misstatements is dissipated as a result, then the allegations can serve as a corrective disclosure." *Id.*

3

The court found loss causation adequately alleged because the allegations at issue came from a complaint filed by a whistle blower who was a "former insider of the company who had personal knowledge of the facts alleged," and resulted in a *30%* plunge in the company's stock price, which suggested that "the market regarded his factual allegations as credible and acted upon them on the assumption that they were true." *Id.* at 792-93.

Contrasting the case to *Curry*, *BofI* explained that "the customers who filed complaints in *Curry* were outsiders who lacked any firsthand knowledge of Yelp's practices" and thus "could not attest to whether Yelp was actually engaged in manipulating reviews, nor to whether the reviews the company posted were authentic and independent." *Id.* at 793. The Ninth Circuit "refused to allow the plaintiffs to allege loss causation 'merely by resting on a number of customer complaints and asserting that where there is smoke, there must be fire.'" *Id.* (quoting *Curry*, 875 F.3d. at 1225). Plaintiffs say that their allegations are "far more credible" than those in *Curry* (Opp. 23:12), but that is Plaintiffs' mere say-so based on nothing more than their contention that uncorroborated government allegations are accorded some special deference. *Cf. In re Mattel, Inc. Sec. Litig.,* 2021 WL 1259405, at *12 (C.D. Cal. Jan. 26, 2021) ("To be sure, merely announcing an investigation or disclosing uncorroborated allegations that precede a stock price drop do not establish loss causation") (discussing *BofI*).

Plaintiffs' discussion of *BofI* ignores the decision's discussion of *Curry*, the importance of the whistleblower's credibility as a "former insider," and the market's dramatic 30% stock drop as reasons animating the Ninth Circuit's holding. Here, the DOJ cannot be likened to the whistleblower in *BofI*. The DOJ is not an "insider"—it is like the "outsiders" in Yelp who "lacked any firsthand knowledge" of Visa's practices. *BofI*, 977 F.3d at 793. And the stock here dipped a modest 6%.

Nor do Plaintiffs plead facts showing that the market treated the allegations as "credible," as *BofI* requires. *Id*. at 792. Rather than plead facts showing that, Plaintiffs merely say they have done that. (Opp. 21:26-22:3.) Plaintiffs' say-so does not substitute for the facts required. *Metzler* ruled that courts cannot indulge in "unwarranted inferences" and "[c]onclusory allegations" and thereby rejected the plaintiff's conclusory allegation that "the market understood" that a fraud was revealed. 540 F.3d at 1064-65. This court should reach the same conclusion here.

4

Not only do Plaintiffs fail to plead facts about market reaction, they ask the Court to ignore analyst commentary in the face of the DOJ Complaint's filing reiterating that "V's network is generally superior to regionals on acceptance, fraud & auth rates" (Ex. 2 at 2); and that V offers its network "additional benefits such as cybersecurity and fraud prevention." (Ex. 6 at 2.) Far from construing the DOJ's allegations as revealing a fraud regarding the "capabilities" of Visa's network, the analysts doubled-down in their belief in Visa's capabilities in this regard. (MTD 12.)

Further, analysts did not credit DOJ's allegations of wrongdoing that underpin Plaintiffs' claim that Defendants' statements were misleading. Analysts opined that the DOJ did not have a "slam dunk" case," that Visa's alleged practices "are often normal practices in other industries," and that "[we] have a hard time seeing volume-based pricing as truly anticompetitive." (MTD 12 (quoting Exs. 2-5).) The analysts confirmed that the market was not assuming the DOJ Complaint was viable, let alone a revelation of fraud. This makes this case far different from Plaintiffs' case, *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016); (Opp. 24:4.)

In *Lloyd*, the defendant, CVB, a bank and commercial lender, was experiencing well-publicized issues with its "largest borrower" and "largest exposure," Garrett Group. *Id*. at 1204. When CVB disclosed an SEC investigation into its loan underwriting, its stock tumbled 22%. *Id.* Key to the Ninth Circuit's finding that loss causation was sufficiently pleaded was that "the market and ***various analysts*** perceived the subpoena to be related to CVB's alleged misstatements about Garrett's ability to repay." *Id.* at 1210-11 (emphasis added). Plaintiffs point to no such thing here. Without any factual allegations showing that the market credited the DOJ's allegations, Plaintiffs have failed to plead that the stock price decline was caused by the market learning the "very facts about which the defendant lied," as required by *Wochos v. Tesla*, *Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021). This alone is fatal.

**B.    <u>Plaintiffs Point to a Modest Stock-Price Decline That Rebounded</u>**

In addition to failing to show that the "truth" of the alleged fraud was revealed, Plaintiffs also fail to show a "significant" stock drop that the Supreme Court's *Dura* decision requires. 544 U.S. at 342 (ignored by Plaintiffs). The Motion showed that this requirement is not satisfied where, as here,

DEFENDANTS' REPLY ISO MTD                                    Case No. 5:24-cv-08220-NW

there is "a 'modest' drop in the stock price that coincides with the disclosure of certain news but then 'recover[s]' very shortly after.'" *Tesla*, 985 F.3d at 1197 (alteration in original) (citation omitted).

The Opposition does not dispute that the 6% stock-price decline at issue here was "modest," like the 4% decline in *Tesla* and unlike the 30% plunge in *BofI*, 977 F.3d at 788. Instead, the Opposition argues this case is distinguishable because Visa's stock price took longer to fully recover than Tesla's stock price. (Opp. 24.) The Opposition, however, ignores what the Ninth Circuit stated. (MTD 13-14.) *Tesla* observed: "Tesla's stock price, which had closed at $356.88 on October 6 [before the alleged corrective disclosure], closed at $342.94 on the next trading day, October 9 [after the alleged corrective disclosure]. However, the stock price immediately rebounded, closing at $355.59 on October 10 and trading between $350 and $360 over the next week." 985 F.3d at 1197. When the Ninth Circuit pointed out that the stock price had "immediately rebounded" on October 10 to $355.59, it was pointing out that the stock price had started going back up, not that it had "immediately recovered" or "fully recovered." *See id.*

That is exactly what happened here. Within a couple of trading days Visa's stock price "immediately rebounded" in the same sense that Tesla's stock did. After the immediate rebound in *Tesla*, Tesla's stock traded between $350 and $360 over the next week," meaning that Tesla's stock price fluctuated with an upward trajectory, just like here as illustrated by Charts 1 and 2. (*See* MTD 15.) Also, as in *Telsa* and *Metzler*, Visa's stock price experienced a "sustained price recovery," *Tesla*, 985 F.3d at 1198, as those charts further illustrate. This case is like *Tesla* in all of these ways: a modest stock drop, a prompt rebound, and a steady, sustained recovery.

Unable to get around the dispositive impact of *Tesla*, Plaintiffs try to evade its holding and the precedents that underpin it. Plaintiffs call *Metzler*'s similar holding "dicta," citing *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 985 (N.D. Cal. 2015); (Opp. 25.) The problem for Plaintiffs is that *Tesla* is controlling, post-dates *Polycom*, and expressly relied on *Metzler*'s discussion on this point as a holding. *Tesla*, 985 F.3d at 1198. So too, did *Loos*, 762 F.3d at 889.

That is why multiple decisions dismiss complaints and reinforce Defendants' arguments that the relevant 6% stock-price decline here was "modest" and that its recovery negates any inference of loss causation under *Tesla*. "While not a hard and fast rule, 'securities complaints tend to be

6

DEFENDANTS' REPLY ISO MTD                                    Case No. 5:24-cv-08220-NW

predicated on double digit declines.'" *Daniels Fam. 2001 Revocable Tr. v. Las Vegas Sands Corp.*, 709 F. Supp. 3d 1217, 1237 (D. Nev. 2024) (citation omitted). In *Daniels*, the court found that a 5% drop was modest and insufficient to show loss causation in the wake of a prompt recovery. *Id.* In *Ramos v. Comerica Inc.*, the court dismissed a complaint in light of a "'modest' price drop" of 7.4% followed by quick and "sustained" recovery over subsequent three months. 2024 WL 2104398, at *4 (C.D. Cal. Apr. 12, 2024) (citation omitted). In *Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *17 (D. Ariz. May 25, 2023), the stock price fell by a "modest" 7% and quickly recovered. The same is true for *Jedrzejczyk v. Skillz Inc.*, 2023 WL 2333891, at *5 (N.D. Cal. Mar. 1, 2023) (rejecting loss causation allegations in the face of a prompt stock rebound), *aff'd*, 2024 WL 1635568 (9th Cir. Apr. 16, 2024); *Daniels*, 709 F. Supp. 3d at 1238 (finding loss causation allegations were inadequate in the face of a modest stock drop and prompt rebound). (MTD 14.) Plaintiffs ignore all of these.[1]

Doomed by those cases and *Telsa*'s dispositive impact, Plaintiffs retreat to contrary, out-of-circuit authority. (Opp. 25:19-20 (quoting *Action AG v. China N.E. Petroleum Holdings Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012); citing *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 391 (N.D. Ga. 2019)).) Alternatively, Plaintiffs largely rely on unpublished cases from within the Ninth Circuit that pre-date *Tesla*. (Opp. 25 (citing *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349 (C.D. Cal. 2015)).) *Tesla* and *Metzler* control and support dismissal for this additional reason.

## II.     PLAINTIFFS ALSO FAIL TO PLEAD A "STRONG INFERENCE" OF SCIENTER

Plaintiffs' claim fails for the additional, independent reason that it does not plead a "strong inference" of scienter. (MTD at 16:9-20:14.) The pleading "bar set by *Tellabs* is not easy to satisfy." *Webb v. Solarcity Co.*, 884 F.3d 844, 855 (9th Cir. 2018). Plaintiffs do not satisfy it here.

### A.     The Lack of a Plausible Motive Negates Scienter

Fraud is a serious accusation with consequences that are potentially ruinous personally, reputationally, professionally, and financially. For that reason, the Ninth Circuit has repeatedly held

---

[1] The Opposition's other cases do not save Plaintiffs. *Hable v. Godenzi*, 2023 WL 8653185, at *8 (D. Nev. 12, 2023) involved a 36% stock-price drop—one that is six times the decline here. There was no discussion of an "immediate rebound," like that discussed above. *See id.* And in *Pujo v. EHang Holdings Ltd.*, 2025 WL 1242324, at *14 (C.D. Cal. Mar. 26, 2025), the court observed that "unlike the 'modest' 3.9% stock drop in [*Tesla*]. . ." the stock price for defendant "dropped by 12.7%" —nearly double the decline here.

7

that the "lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021). And where Defendants are not alleged to have any motive or alleged to have cashed in (by selling stock or otherwise), the scienter inference is weak. (MTD 16 (citing *In re Rigel Pharm.*, Inc. *Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012)); *Webb*, 884 F.3d at 856 ("[A] lack of stock sales can detract from a scienter finding.")). The Opposition ignores all of these controlling cases.

The Opposition asserts that "Defendants were motivated not to discuss Visa's use of Cliff Pricing and related tactics because of DOJ's pending investigation." (Opp. 19:13-20.) Why? What facts give rise to that inference? Plaintiffs point to none and expect the Court to simply accept that conclusory assertion uncritically. Nor does their sole case help them. In *Donley* one of the defendants sold over $250 million in stock, which would have provided a motive for not disclosing an ongoing government investigation that followed upon "multiple violations" of a consent decree. 2024 WL 794641, at *1, 4 (C.D. Cal. Feb. 23, 2024). Further, the company there did not disclose that investigation until *after* the class period. *Id.* at *1-2. Here, there were no stock sales, no violation of consent decrees, and Visa disclosed the DOJ's ongoing investigation *before and throughout* the Class Period. (¶¶ 1, 209.) *Donley* spotlights the incoherence of Plaintiffs' factually unsupported fraud theory. The absence of a plausible motive strongly negates scienter here. (MTD 16.)

### B.    Speaking About a Subject Does Not Support Any Scienter Inference

Plaintiffs' main argument on scienter is that "Defendants specifically addressed the strategy that Visa was using to respond to the Regulation II Clarification repeatedly." (Opp. 16:11-12.) In other words, Defendants spoke about the subject. Scienter is not a test of what the tongue does. It is a mental-state test that requires Plaintiffs to plead facts giving rise to a "strong inference" that Defendants spoke with an "intent to deceive" or "deliberate recklessness," which "reflects some degree of intentional or conscious misconduct.'" *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014) (citation omitted).

For good reason, the "generalized allegations" that Defendants spoke provide no factual basis to infer anything about Defendants' mental state. *Prodanova*, 993 F.3d at 1109. That is why the law does not permit Plaintiffs to conflate speaking with scienter: "if the mere decision to speak on a topic

DEFENDANTS' REPLY ISO MTD                                Case No. 5:24-cv-08220-NW

were indicative of scienter, there would be no distinction between the element of scienter and the requirement to plead a false statement." *Joyce v. Amazon.com, Inc.*, 2023 WL 8370101, at *13, *14 (W.D. Wash. Dec. 4, 2023) (citing *Prodanova,* 993 F.3d at 1107).

The Opposition ignores the Ninth Circuit's oft-quoted and followed holding that: "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler*, 540 F.3d at 1068; (MTD 17.)  There is no such "specific information" alleged here.  Completely missing are facts showing "the who, what, when, where, and how" of Defendants' knowledge.  *Prodanova*, 993 F.3d at 1106.  Plaintiffs fail to plead facts that "directly contradict[ed] what. . . defendant[s] knew at the time" of their statements. *Weston Fam.  P'ship LLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022).  This is fatal.

Plaintiffs are not saved by the "core operations" inference, which is reserved for "rare circumstances." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062-63 (9th Cir. 2014) (quoting *S. Ferry, LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008)).  The Motion detailed the reasons why the core operations inference is not satisfied.  (MTD 17-19.)  The Opposition responds in a paragraph.  In Plaintiffs' alternative universe, if something is important to a business or a "core product," the court can infer scienter.  (Opp. 19.)  If that were the law, the "core operations" inference would not be an exception to the rule that is "not easy" to establish.  (MTD 18 (quoting *Intuitive Surgical*, 759 F.3d at 1062; *Killinger*, 542 F3d at 785 n.3)  Not surprisingly, the Opposition's argument ignores every core-operations case cited by the Motion, including *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008), which highlights what is needed. There, the theory was satisfied by allegations that executives would certainly have known when they touted their revenue expectations that their largest contract had been canceled when their factory was a "ghost town" and 80% of the company's revenue was put in jeopardy by a stop-work order from the government, its customer. *Id.* at 988.

Plaintiffs' own cases further highlight what is missing here.  (Opp. 16, 19, 20.)  In *Reese v. Malone*, 747 F.3d 557, 573 (9th Cir. 2014), an oil company experienced leaks in two pipelines a few months apart.  After the first leak, but before the second, one officer made statements assuring

9

DEFENDANTS' REPLY ISO MTD                                    Case No. 5:24-cv-08220-NW

investors that the second pipeline was unlikely to experience a leak. *Id*. At the time the officer made those statements, she possessed a letter from government regulators notifying her that there was a strong chance that a leak would develop in the second pipeline as well. *Id*. at 574. That government warning was one of many facts giving rise to a strong inference of scienter. *See id.*

In *In re VeriFone Holdings, Inc. Sec. Litig.*, independent auditors raised concerns that ultimately led to a restatement that revealed an overstatement of earnings by as much as 600%, and cited multiple internal documents, including "expletive-laden email" from the CEO to the CFO saying: "We need to get to 36.5 cents [in earnings]. Figure it out." 704 F.3d 694, 700, 705 (9th Cir. 2012) (alteration in original). In *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *10 (N.D. Cal. Nov. 4, 2020), there were many facts giving rise to a strong inference of scienter, including an "'I knew it all along' type of admission." In *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1037, 1042 (N.D. Cal. 2016), the company was forced to restate its financials, it admitted to "specific illegal accounting practices," and its outside auditors concluded "that management was not maintaining an effective control environment." In *In re Wells Fargo & Co. Shareholder Derivative Litigation*, 282 F. Supp. 3d 1074, 1099-1100 (N.D. Cal. 2017), the court pieced together multiple facts described as "red flags" that gave rise to a strong inference of scienter, including a whistleblower lawsuit, investigations by the Office of the Comptroller of the Currency and the Consumer Financial Protection Bureau, and an L.A. Times article detailing the fraudulent account practices at issue. *Id.*

Unlike in Plaintiffs' cases, here there are no admissions, no red flags, no auditor warnings, no restatement, no internal documents, no government warnings, no revenue losses—just the DOJ's unadjudicated allegations following an investigation that Visa repeatedly disclosed.

### C.    Holistically, the Inferences of Scienter Are Weak

Under a separate, "holistic[ ]" review of Plaintiffs' scienter allegations, as mandated by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007), Plaintiffs' allegations do not give rise to a strong inference of scienter. There are no allegations of motive and no suspicious trading. There are no insiders with knowledge of any Defendants' state of mind. No internal reports

DEFENDANTS' REPLY ISO MTD                                Case No. 5:24-cv-08220-NW

are cited.  No facts are offered showing any information contradicting any statement.  Plaintiffs offer no cogent explanation for the alleged fraud.  And that should support one inference: there was none.

## III.    PLAINTIFFS ALSO FAIL TO PLEAD ANY STATEMENT WAS MISLEADING

### A.    The Challenged Statements Are Incapable of Objective Verification

Defendants showed that Plaintiffs have challenged nonactionable puffing statements that are incapable of objective verification.  (MTD 21.)  The challenged statements reflect speakers' views about what Visa merchants and customers value given their individual incentives and risk appetite.  (*Id*. at 29-30.) The Opposition's lead response is to assert that the issue "entail[s] delicate, fact-intensive assessments that are more properly left to the jury." (Opp. 10:13-14.)  Plaintiffs distort the law: "courts routinely dismiss securities actions premised on puffery at the motion to dismiss stage." *Barnes v. Edison Int'l*, 2021 WL 2325060, at *9 (C.D. Cal. Apr. 17, 2021), *aff'd*, 2022 WL 822191 (Mar. 18, 2022).  And the Ninth Circuit routinely affirms dismissal on this ground.  *E.g.*, *Twitter*, 29 F.4th at 619; *Tesla*, 985 F.3d at 1180, 1184, 1196; *Intuitive Surgical*, 759 F.3d at 1060-61; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010); *Apollo*, 774 F.3d at 606-607.

The Opposition next faults Defendants for relying on *Apollo*.  (Opp. 10:20-21.)  Plaintiffs say that *Apollo* involved "generally optimistic, essentially boilerplate" statements.  (Opp. 10:22.)  The problem for Plaintiffs is obvious: the statements they challenge are substantially similar to those at issue in *Apollo*.  Here, Plaintiffs challenge statements relating to Visa's product offering, such as: "We feel that across our fraud mitigation capabilities and protections, our dual message capabilities, and our security and reliability, dispute resolution, trust, brand protections, et cetera . . . [w]e feel that we are very well in this world."  (¶ 127.)

In *Apollo*, like here, the challenged statements related to the defendant's product offering.  The defendant said that its "revenue growth is attributable to our offering comprehensive service combining quality educational content, teaching resources, and customer service with formats that are accessible and easy to use for students as well as our corporate clients."  774 F.3d at 606.  In *Apollo*, like here, the plaintiffs alleged that certain undisclosed unlawful practices that were subject to government scrutiny were the "true" reasons revenue grew.  *Id.*  The defendant allegedly "hid the fact that it had created an incentive system for recruiters" that resulted in recruitment of "flawed

11

students, who were ultimately unable to pay tuition." *Id.* at 607. The Ninth Circuit held that the statements were not actionable as a matter of law. The reason: the alleged statements were "inherently subjective 'puffing.'" *Id.* at 606. The challenged statements here are indistinguishable. (*Compare id. with* MTD 21:27-22:16.) The ruling in *Apollo* is on-point, controlling, and dispositive.

Plaintiffs resist that conclusion based on a contrived legal exception. They argue that the statements here cannot be puffery because they were "made in response to specific questions from analysts." (*Id.*) Plaintiffs are wrong. The statements in *Apollo* were also made during conference calls with analysts. 774 F.3d at 606; *In re Apollo Grp., Inc. Sec. Litig.*, 2012 WL 2376378, at *3-5 (D. Ariz. June 22, 2012), *aff'd sub nom.*, 774 F.3d 598 (9th Cir. 2014). And other Ninth Circuit cases have held that statements made in response to specific analyst questions are inactionable puffery. *E.g.*, *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098-99 (9th Cir. 2022) (holding that statements regarding "tremendous growth" in China made in response to analysts' questions were puffery, despite allegations that growth in China had "slowed materially").

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023) (Opp. 10) did not endorse a different rule. Plaintiffs, like others who have distorted *Forescout*, "omit[] the Ninth Circuit's additional reasoning" that, in the face of questions about disappointing financial results, "the statements went beyond mere optimism by 'provid[ing] a concrete description of the past and present," including "the company's anticipated poor performance and how that squared with an increase in revenue guidance for the year overall." *Lew v. ON Semiconductor Corp.*, 2025 WL 1918543, at *10 (D. Ariz. July 11, 2025) (second alteration in original) (quoting *Forescout*, 63 F.4th at 770-71) (holding response to analyst question was puffery) Here, Plaintiffs point to no "concrete description of past and present" matters that are objectively verifiable as in *Forescout.*

### B.   Plaintiffs Have Not Alleged an Actionable Omission in Any Event

Even if actionable (they are not), Defendants showed that the challenged statements are opinions—statements reflecting Defendants' beliefs, perceptions, feelings, and thoughts about Visa's competitive advantages and strengths. (MTD 24-25.) Plaintiffs do not dispute that this means that they must meet the heightened test for falsity articulated by *Omnicare, Inc. v. Laborers Dist.*

12

*Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015).  The Opposition wishes away *Omnicare* in a parenthetical.  (Opp. 15:11-14.)  The reason is obvious: Plaintiffs do not satisfy it.

The reason why *Omnicare* held that pleading falsity under an omissions theory would be "no small task for an investor" is because outsiders like Plaintiffs do not know what facts went to the basis of challenged statements of opinion.  *Omnicare*, 575 U.S. at 194.  Why did Defendants believe what they did?  Plaintiffs do not know.  And so they cannot show that Defendants misrepresented their beliefs here.  As *Omnicare* explained, an opinion statement "is not necessarily misleading when [a speaker] knows, but fails to disclose, some fact cutting the other way."  *Omnicare*, 575 U.S. at 189.  That is because "investors understand that opinions sometimes rest on a weighing of competing facts; indeed, the presence of such facts is one reason why [a speaker] may frame a statement as an opinion. . ."  *Id.* at 189-90.  That is why *Omnicare* requires that a complaint plead "facts going to the basis for [defendant's] opinion. . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."  *Id.* at 194; *Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).

The Opposition ignores *Align* and multiple cases that dismissed complaints where, as here, no facts "going to the basis of defendants' opinion" were alleged.  (MTD 25 (citing *Pirani v. Netflix, Inc.*, 2024 WL 4894291, at *8 (N.D. Cal. Nov. 26, 2024); *In re Eargo, Inc. Sec. Litig.*, 656 F. Supp. 3d 928, 940 (N.D. Cal. 2023); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *14 (N.D. Cal. July 21, 2020); *Stephens v. Maplebear Inc.*, 2025 WL 1359125, at *6 (N.D. Cal. May 9, 2025); *Sigman v. Nuscale Power Corp.*, 2025 WL 1455432, at *13 (D. Or. May 21, 2025)).)  The Opposition argues that Plaintiffs have alleged "omitted material facts."  (Opp. 13:15-27, 15:18-19.)  Putting aside that they do not actually do that, they cannot show that they have alleged "facts going to the basis" of each opinion.  There is a difference.  And that is fatal under the *Omnicare* test they shun.

In that void's face, the Opposition tries to limit the fatal blow, asserting that Defendants conceded that certain statements are not opinions.  (Opp. 14-15 (citing ¶¶ 132, 134, 146, 151, 155, 163, 168).)  Wrong.  The Motion argued that these statements "reflect beliefs . . . about Visa's product features, capabilities, and competitive advantages in the market place."  (*Compare id. with* MTD 21:2-3, 22:16, 24:24 (citing ¶¶ 132, 134, 138, 140, 146, 149, 155, 157, 163, 165).)  That the

13

Motion did not cite two of those paragraphs (¶¶ 151, 168) does not mean Defendants "conceded" that they are not opinions. This is the type of ticky-tack argument courts routinely reject. *Henryhand v. Dorel Juv. Grp., Inc.*, 2017 WL 7806622, at *6 n.4 (C.D. Cal. Aug. 9, 2017).

As with the other challenged opinions, Plaintiffs do not identify any "facts going to the basis" of the stated opinion that there are "multiple factors" beyond cost including "functionality" that affect merchant choices (¶ 151) or the belief that clients "can reassess their commitments to us at any time," (¶168) nor do Plaintiffs plead facts showing these statements were objectively false when made in any case. *Apollo*, 774 F.3d at 606; (MTD 20.) For example, Plaintiffs do not plead any facts showing that "dual messaging versus single messaging," was not "an important distinction" for merchants (¶ 151) or that Visa's clients and merchants could not "reassess their commitments to us at any time or develop their own competitive services." (¶ 168.) All Plaintiffs offer is their conclusory say-so that those statements were materially misleading for failure to disclose the practices alleged in the DOJ Complaint. (Opp. 12-15.) But the DOJ's allegations are not facts, nor independently corroborated. This is reason enough to reject Plaintiffs' argument.

Moreover, there was no duty to disclose them. (MTD 22-24.) Information need be disclosed "only if [it] renders affirmative statements made misleading." *Macquarie Infrastructure Corp. v. Moab Partners*, L.P., 601 U.S. 257, 265 (2024). That has long been the rule in the Ninth Circuit, which has explained that defendants must "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Courts routinely follow *Brody* in dismissing alleged omissions claims where, as here, defendants did not make "affirmative" statements on a subject but were "silent on the subject" of the alleged omission. *See Intuitive*, 759 F.3d. at 1061-62; *In re Yahoo! Inc. Sec. Litig.*, 2012 WL 3282819, at *8 (N.D. Cal. Aug. 10, 2012), aff'd, 611 F. App'x 387 (9th Cir. 2015); *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1125 (D. Nev. 2020); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *10 (N.D. Cal. Nov. 27, 2018); (Opp. 12.) This Court should do the same.

Confronting this high-hurdle, Plaintiffs try to rewrite the law, arguing there was a "close connection" between the alleged misstatements and the alleged omissions. (Opp. 13.) "Close connection" (whatever that means) is not the test, and Plaintiffs cite no law for that proposition. (*Id.*)

14

The test is an "affirmative statement," as discussed above and in the Motion. Plaintiffs do not and cannot point to an affirmative statement about Cliff Pricing or other sales practices addressed in the DOJ Complaint. This is dispositive as to all statements that Plaintiffs (incorrectly) contend are not opinions under *Macquarie*, *Brody*, *Metzler*, *Intuitive*, and other controlling cases rejecting the boundless and baseless omissions theory Plaintiffs advance here.

The Opposition cites cases that show the challenged statements did not give rise to any disclosure duty. (Opp. 12.) In *Berson,* defendants affirmatively spoke about their "backlog reports," (*i.e.*, revenue in progress), so the failure to disclose a stop-work order (*i.e.*, gutting the revenue stream) from the government was an actionable omission. 527 F.3d at 987. In *Schueneman v. Arena Pharms., Inc.*, defendants affirmatively characterized all clinical trial data as "favorable," omitting the fact that rats given large quantities of the study drug had developed cancer. 840 F.3d 698, 701-02, 707 (9th Cir. 2016). Plaintiffs do not identify any similar affirmative statement here about Visa's Cliff Pricing or similar tactics. At most, Plaintiffs' entire case boils down to the assertion that they should have made disclosures about these subjects in light of the DOJ's subsequent allegations. That is the very type of "fraud by hindsight" that Ninth Circuit precedent forecloses. *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1084-85 (9th Cir. 2002).

## CONCLUSION

For all these reasons, this action should be dismissed. Plaintiffs' failure to plead loss causation supports dismissal with prejudice as multiple Ninth Circuit cases have held given the difficulty of curing an unfixable problem. *Tesla*, 985 F.3d at 1198; *Apollo*, 774 F.3d at 608-09, *Curry*, 875 F.3d at 1225; *Metzler* 540 F.3d at 1065.

Dated: October 24, 2025                          Respectfully submitted,

                                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                          By: _____/s/ Mark R.S. Foster_____

                                   *Attorneys for Defendants*
                                   *Visa Inc., Ryan McInerney,*
                          *Chris Suh, Vasant Prabhu, Alfred F. Kelly, Jr.,*
                          *Peter Andreski, Oliver Jenkyn, and Jack Forestell*

15

DEFENDANTS' REPLY ISO MTD                                   Case No. 5:24-cv-08220-NW