UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEIBEI CAI,<br><br>        Plaintiff,<br><br>    v.<br><br>VISA INC., et al.,<br><br>        Defendants. | Case No. 24-cv-08220-NW<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING MOTION TO STRIKE**<br><br>Re: ECF No. 45, 46 |

On September 12, 2025, Defendants Visa Inc. ("Visa"), Ryan McInerney, Chris Suh, Vasant Prabhu, Alfred F. Kelly, Jr., Peter Andreski, Oliver Jenkyn, and Jack Forestell filed a motion to dismiss and a motion to strike Plaintiffs' class action complaint. ECF Nos. 45, 46.[1] Having considered the parties' briefs and the relevant legal authority, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the hearing scheduled for December 17, 2025, GRANTS the motion to dismiss with leave to amend, and DENIES the motion to strike as moot.

I.   **REQUEST FOR JUDICIAL NOTICE**

In connection with their motion to dismiss, Defendants ask the Court to take judicial notice of seven separate exhibits. These exhibits fall into two categories (1) Visa stock historic stock price information at ECF No. 45-2 (titled "Exhibit 1") and (2) analyst reports at ECF Nos. 45-3 to 45-8 (titled "Exhibits 2-7"). Plaintiffs only oppose judicial notice of the analyst reports. ECF No. 51.

In support of their opposition to Defendants' motion to dismiss and motion to strike,

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

1  Plaintiffs request that the Court either take judicial notice or incorporate by reference two exhibits:
2  (1) Visa's Form 10-K for the fiscal year ending on September 30, 2023 at ECF No. 48-2 (titled
3  "Exhibit 1"), and (2) Visa's amended answer to the complaint filed by the United States
4  Department of Justice ("DOJ") in the pending antitrust case discussed later in this Order at ECF
5  No. 49-2 (also titled "Exhibit 1"). ECF No. 50.

When assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), district courts generally cannot consider material outside of the pleadings. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). However, courts considering a motion to dismiss that is governed by the PSLRA may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

A court may take judicial notice of facts "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Accordingly, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). But a court cannot take judicial notice of disputed facts contained in such public records. *Id.*

Because Plaintiffs do not oppose, and the Court finds it appropriate to do so, the Court judicially notices Visa's stock historic stock price information at ECF No. 45-2. At this time, the Court declines to rule on the remainder of the parties' requests for judicial notice, as the Court did not rely on any of those documents in resolving the present motions.

## II. BACKGROUND[2]

### A. The Parties

Defendant Visa processes and facilitates debit and credit card transactions for businesses and consumers. The issues underpinning this case relate to Visa's debit card transaction network,

---

[2] The factual background is drawn from Plaintiffs' class action complaint ("CAC"). *See* ECF No. 38.

2

"the communications infrastructure that facilitates secure, real-time payment between businesses and consumers' bank accounts." ECF No. 38 ¶ 50.

Lead Plaintiff Beibei Cai purchased Visa common stock during the putative class period. Cai brings this suit on behalf of himself and other similarly situated persons or entities ("Plaintiffs") who purchased or otherwise acquired Visa common stock between March 2, 2023, and September 23, 2024 ("Class Period").

Defendants Ryan McInerney (Chief Executive Officer), Chris Suh (Chief Financial Officer), Vasant Prabhu (former Vice Chairman & CFO), Alfred F. Kelly, Jr. (former CEO and Chairman), Peter Andreski (Global Corporate Controller and Chief Accounting Officer), Oliver Jenkyn (Group President), and Jack Forestell (Chief Product and Strategy Officer) ("Individual Defendants") worked at Visa in various roles during the Class Period.

### B. Factual Allegations

#### 1. Debit Transactions

Despite running the nation's largest debit network, Visa does not issue debit cards. Instead, Visa contracts with card issuing banks ("Issuers") that issue cards that use the Visa network. Visa also contracts with merchants' banks ("Acquirers") so that the merchant can accept debit cards that use the Visa network. Visa, via its debit network, provides a "Rail," or "method by which the consumer and Acquirers communicate with each other to transfer the funds and complete the transaction." *Id.* ¶ 52.

To facilitate transactions, Visa's debit network issues a unique account identifier that can be accepted by participating merchants. A transaction where a consumer uses a debit card in person at a merchant is known as a "Card-Present Transaction" and one where a consumer uses a debit credential online or over the phone is known as a "Card-Not-Present Transaction."

When debit card transactions initially took off in the 1990s, merchants installed PIN pads for customers to enter their 4-digit PIN numbers to make purchases. These transactions were processed over PIN Networks like, STAR, NYCE, and Pulse. "Unlike the PIN Networks, which processed debit transactions over Rails designed for ATM networks, Visa processed debit purchases over Visa's existing credit card Rails." *Id.* ¶ 59. Because of this and Visa's internal

1  rules initially requiring merchants to accept both its credit and debit cards, Visa's debit cards rose
2  in popularity.

### 2. Legal Framework

In 2010, Congress passed the "Durbin Amendment" as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act. The Federal Reserve's rule known as "Regulation II" implemented the Durbin Amendment. Regulation II required each debit card be enabled with at least two unaffiliated networks – typically a "Front-of-Card Network" (where the network is branded on the front of the debit card) and a "Back-of-Card Network" like Mastercard's Maestro or a PIN Network. In October 2022, the Federal Reserve adopted the "Regulation II Clarification," mandating that the unaffiliated network be enabled for Card-Not-Present transactions.

Plaintiffs allege this legal and regulatory framework aimed to promote competition and undercut Visa's dominance of the debit transaction market, but that this aim failed. In support, Plaintiffs note that Visa's network fees are higher than that of PIN Networks, yet Visa continues to process nearly two-thirds of all debit transactions.

### 3. DOJ Investigation

In March 2021, DOJ's Antitrust Division began investigating Visa's debit practices. Visa disclosed the fact of this investigation in its SEC filings, and disclosed that the civil investigative demand "focuse[d] on U.S. debit and competition with other payment methods and networks." ECF No. 38 ¶ 210. On September 24, 2024, DOJ sued Visa in the Southern District of New York alleging four separate violations of the Sherman Antitrust Act. *See United States of America v. Visa Inc.,* Case No. 1:24-CV-07214, ECF No. 1 ("DOJ Complaint").

As Plaintiffs note in their complaint, the DOJ Complaint alleges that Visa used its market power to circumvent the intent of the Durbin Amendment and the Regulation II Clarification. DOJ alleges that Visa exploited transactions that for various reasons could not be processed with the unaffiliated Back-of-the-Card Network and had to be routed over Visa's debit network (called "Non-Contestable Transactions"). DOJ asserts that Visa charges artificially high "Rack Rates" for Non-Contestable Transactions in an effort to pressure merchants and Acquirers to route nearly all

eligible debit transactions through Visa to avoid paying exorbitant fees. Known as "Cliff Pricing," DOJ alleges that Visa charges lower prices for every transaction routed to Visa, as long as the total volume of transactions exceeds a certain threshold. If the merchant or Acquirer failed to meet the threshold, then under Cliff Pricing, Visa charged the high Rack Rate on all transactions routed through its debit network, including Non-Contestable Transactions, making it uneconomical to use non-Visa debt networks. This behavior, in addition to early termination fees, clawback provisions, and other penalties allegedly imposed by Visa, created de facto exclusive arrangements.

### C. Challenged Statements

In short, Plaintiffs argue that "it was false and misleading for Defendants to repeatedly represent that the Regulation II Clarification was having little impact on Visa's routing volume because the value that merchants and Acquire[r]s put on certain features of Visa's debit network outweighed the price advantage of alternative networks." ECF No. 38 ¶ 21. Plaintiffs assert the actual reason for Visa's high routing volume was due to its allegedly anticompetitive antics.

Plaintiffs allege that several statements were false and misleading when made. The challenged statements fall into three categories: (1) statements from earnings calls and investor conferences about the Regulation II Clarification, (2) statements from investor conferences about financial technology ("fintech"), and (3) statements in Visa's public filings. The allegedly false and misleading statements are summarized below.

#### 1. Earnings Call and Investor Conference Statements About the Regulation II Clarification

First, Plaintiffs allege that several of Visa's statements on earnings calls and at investor conferences regarding the impact of the Regulation II Clarification were materially false and misleading. Plaintiffs argue that statements like "we expect minimal impact," *see* ECF No. 38 ¶ 127, "[w]e continue to believe that merchants are going to want to choose to route transactions to Visa for a number of reasons," *see id.* ¶ 131, and "Reg II has not measurably impacted volumes so far, *see id.* ¶ 137, were "materially false and misleading when made because [they] failed to disclose that an important part of Visa's response to the Regulation II Clarification was to use Cliff Pricing and the related tactics." *Id.* ¶¶ 128, 131, 133, 135, 139, 141, 145, 147, 150, 152, 154,

156, 158, 162.

### 2. Investor Conference Statements About Fintech

Second, Plaintiffs allege that two statements made at two different conferences about the risk and opportunity to Visa from fintech were materially false and misleading. In particular, Plaintiffs allege Defendant Prabhu's statement in May 2023 about Apple "riding [Visa's] network" was materially false and misleading because he "failed to disclose that Visa was paying Apple hundreds of millions of dollars a year not to develop a competing product." *Id.* ¶¶ 163-64. Additionally, Plaintiffs allege that Defendant McInerney's May 2024 statement that Visa was "going to open up [its] network" and help fintechs "achieve their objectives" was materially false and misleading because in reality "Visa prevented fintechs, such as PayPal and Square, from disintermediating them by threatening high fees for the transactions that the fintechs needed Visa's rails to process." *Id.* ¶¶ 165-66.

### 3. Statements in Visa's Public Filings

Third and finally, Plaintiffs allege that Visa's SEC filings from November 15, 2023, onward containing the statements that "[o]ur revenues and profits are dependent on our client and merchant base, which may be costly to win, retain and develop" and "[o]ur financial institution clients and merchants can reassess their commitments to us at any time or develop their own competitive services" were "materially false and misleading when made because Visa's financial institution clients and merchants could not, in practice, reassess their commitments to Visa at any time because Visa used Cliff Pricing and the related tactics." ECF No. 38 ¶¶ 168-69.

## D. The Filing of the DOJ Complaint

After the DOJ Complaint was filed, "the price of Visa's stock fell $15.85 per share, or approximately 5.5%, from $288.63 per share when the market closed on September 23, 2024, to $272.78 per share when the market closed on September 24, 2024. On September 25, 2024, Visa's stock fell another $3.15 per share to close at $269.63 for a total two-day loss of approximately 6.6% that harmed investors." *Id.* ¶ 23.

## E. Procedural History

On November 20, 2024, Beibei Cai filed a class action complaint alleging claims under

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act") against Visa, Ryan McInerney, Chris Suh, and Peter Andreski. ECF No. 1. On the same day, Cai caused a notice of pendency of the action to be published on *Business Wire*. ECF No. 7. In response to the published notice, the Court received a motion for the appointment of lead plaintiff and lead counsel. ECF No. 14. On April 23, 2025, the Court granted Beibei Cai's motion to be lead plaintiff and appointed Rosen Law Firm, P.A. as lead counsel. ECF No. 31.

On July 15, 2025, lead plaintiffs filed a consolidated class action complaint on behalf of himself and other similarly situated persons or entities who purchased or otherwise acquired Visa common stock during the Class Period. ECF No. 38. Defendants moved to dismiss on September 12, 2025, and moved to strike the amended complaint. ECF Nos. 45, 46. Plaintiffs opposed both motions, *see* ECF Nos. 48, 49, and Defendants filed replies in further support, *see* ECF Nos. 52, 53.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the [plaintiff]." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the tenet that a court must accept a complaint's allegations as true "is inapplicable to . . . [t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Securities fraud class actions must [also] meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014). Under Rule 9(b) and the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to the alleged false statements or omissions, and a party must "state with particularity the circumstances constituting fraud or mistake." 15 U.S.C. § 78u-4(b)(2)(A); Fed. R. Civ. P. 9(b). If the complaint does not

1  satisfy the PSLRA's pleading requirements, the Court must grant a motion to dismiss the

2  complaint.  15 U.S.C. § 78u-4(b)(3)(A).

### B. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The purpose of a Rule 12(f) "motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

## IV. DISCUSSION

Section 10(b) prohibits any act or omission resulting in fraud or deceit in connection with the purchase or sale of any security.  "To plead a claim under [S]ection 10(b) and Rule 10b-5, the Plaintiff[ ] must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017) (quoting *Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 603).

Defendants contend that Plaintiffs fail to adequately plead falsity, scienter, and loss causation.  ECF No. 48.  The Court begins with loss causation.

### A. Loss Causation

The PSLRA requires the plaintiff to prove "that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).  "Loss causation" refers to the "causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  "To prove loss causation, plaintiffs need only show a 'causal connection' between the fraud and the loss . . . by tracing the loss back to 'the very facts about which the defendant lied.'" *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (internal citations omitted).  Stated another way "[t]o establish loss causation in a fraud-on-the-market case, the plaintiff must show that after purchasing her shares and before selling, the following occurred: (1) 'the truth became known,' and (2) the

8

1  revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020). While Plaintiffs are not required to prove loss causation at the motion to dismiss stage, they must (1) allege a "significant" drop in price, and (2) allege with particularity facts plausibly suggesting that the fraud caused the stock drop, as opposed to some other fact. *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 953-54 (9th Cir. 2023).

Defendants argue that Plaintiffs fail to plead loss causation for two reasons. ECF No. 45 at 14-24. First, Defendants assert that Plaintiffs fail to show that any fraud was revealed. *Id.* at 16-21. Second, Defendants argue that Visa's quick and sustained stock price recovery after the modest drop refutes any inference of loss causation. *Id.* at 21-24. Plaintiffs respond to both arguments. ECF No. 48 at 27-31. Accepting the CAC's allegations as true, as the Court must, Plaintiffs have not adequately pleaded loss causation.

First, Plaintiffs fail to allege a casual connection between Defendants' allegedly material misrepresentations and the loss, or the impact on the stock price. At the pleadings stage, while a "plaintiff is not required to show that a misrepresentation was the sole reason for the investment's decline in value, the complaint must, however, set forth allegations that if assumed true, are sufficient to provide the defendant with some indication that the drop in stock price was causally related to the defendant's financial misstatements." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (cleaned up). In the CAC, Plaintiffs fail to provide an indication that the combined 6.6% drop on September 24 and September 25, 2024, in Visa's stock price was in response to allegedly fraudulent misstatements about the Durbin Amendment or the Regulation II Clarification. The gravamen of Plaintiffs' complaint is that "Visa's true tactics" were revealed to the market when "the news broke concerning the contents of the DOJ's lawsuit, first in news articles, and then in the DOJ Complaint itself." ECF No. 48. However, the timing of these allegedly corrective disclosures undercuts Plaintiff's argument. As noted in the complaint, the DOJ began investigating Visa's debit practices in March 2021, a fact Visa disclosed to investors at that time. ECF No. 38 ¶¶ 14, 209. Yet, Plaintiffs assert that articles published the evening of September 23, 2024, after the market closed, reporting that the DOJ planned to

9

1  imminently file suit against Visa for antitrust violations caused Visa's stock to drop approximately

2  5.5% when the market closed on September 24, 2024, without connecting these articles to

3  Plaintiffs' theory of fraud.  More is needed to meet the pleading standard, particularly as to the

4  allegedly corrective disclosures that occurred before the filing of the DOJ complaint.

5       Second, Plaintiffs fail to allege sufficient facts to support a plausible inference of loss

6  causation considering the modest stock price drop followed by a "quick and sustained price

7  recovery." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021).  As alleged and

8  acknowledged by Plaintiffs, Visa's stock price fell 6.6% over two trading days near the end of

9  September 2024.  ECF No. 38 ¶¶ 178, 179.  However, in the days after the drop, Visa's stock price

10  rebounded.  ECF No. 45-2 at 12.  By September 27, 2024, the price already surpassed the closing

11  price on September 24 ($275.17 on September 27, 2024 as opposed to $272.78 on September 24,

12  2024) and just a few weeks later, on October 17, 2024, Visa's stock price fully rebounded and

13  exceed the price before the drop ($290.39 on October 17, 2024 as opposed to $288.63 on

14  September 23, 2024).  *Id.*  Such a quick and sustained price recovery after the modest September

15  2024 drop refutes Plaintiffs' inference that the alleged concealment of the impact of the

16  Regulation II Clarification on Visa's debit network was causally connected to the loss.

17       Because Plaintiffs fail to adequately plead loss causation, the CAC fails to state a claim

18  under Section 10(b) and Rule10b-5.  Accordingly, Court does not reach the questions of falsity

19  and scienter.  The Court GRANTS Defendants' motion to dismiss with leave to amend, as the

20  Court cannot conclude at this juncture that amendment would be futile.

21       **B.**    **Section 20(a)**

22       Because Plaintiffs have not adequately alleged a primary violation of Section 10(b) or Rule

23  10b-5, their control person claims under Section 20(a) necessarily fail.  *See Prodanova v. H.C.*

24  *Wainwright & Co., LLC*, 993 F.3d 1097, 1113 (9th Cir. 2021).

25  \ \ \

26  \ \ \

27

28

10

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with leave to amend. If Plaintiffs wish to file an amended complaint correcting the deficiencies identified above, they shall do so within 30 days of the date of this Order, or by January 2, 2026.

Because Plaintiffs' complaint is dismissed, Defendants' motion to strike is DENIED as moot.

**IT IS SO ORDERED.**

Dated: December 10, 2025

Noël Wise
United States District Judge