MARK R.S. FOSTER (SBN 223682)
mark.foster@skadden.com
BONIFACIO C. SISON (SBN 335484)
bonifacio.sison@skadden.com
MADISON M. FLOWERS (SBN 345759)
madison.flowers@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Attorneys for Defendants*
*Visa Inc., Ryan McInerney,*
*Chris Suh, Vasant Prabhu, Alfred F. Kelly, Jr.,*
*Peter Andreski, Oliver Jenkyn, and Jack Forestell*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BEIBEI CAI, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VISA INC., RYAN MCINERNEY, CHRIS SUH, VASANT PRABHU, ALFRED F. KELLY, JR., PETER ANDRESKI, OLIVER JENKYN, and JACK FORESTELL, <br><br> Defendants. | Case No. 5:24-cv-08220-NW <br><br> **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> Date:　　　April 29, 2026 <br> Time:　　　9:00 a.m. <br> Court:　　　Courtroom 3, 5th Floor <br> Judge:　　　Hon. Noël Wise |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................................ii

INTRODUCTION ..........................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ..............................................2

        A.    Plaintiffs Fail to Show Any "Truth Became Known"....................................2

            1.    Plaintiffs Fail to Connect the Articles to Their Fraud Theory ............2

            2.    The Alleged Corrective Disclosures Do Not Reveal New Information ......................................................................................2

            3.    Plaintiffs Fail to Show the DOJ Allegations Were Acted Upon as Truth..................................................................................................3

        B.    The Quick and Sustained Recovery Refutes Any Inference of Loss Causation....................................................................................................6

    II.    PLAINTIFFS ALSO FAIL TO PLEAD ANY STATEMENT WAS MISLEADING.....................................................................................................6

        A.    The Challenged Statements Are Incapable of Objective Verification.............6

        B.    Plaintiffs Do Not Show Any Statement of Belief Was Misleading ................8

        C.    Plaintiffs Have Not Alleged an Actionable Omission in Any Event ............10

    III.    PLAINTIFFS ALSO FAIL TO PLEAD A "STRONG INFERENCE" OF SCIENTER ...........................................................................................................11

        A.    The SAC Does Not Allege Anything About What Defendants Knew..........11

        B.    The SAC Does Not Plead Facts Showing Any Suspicious Motives.............13

        C.    Holistically, the Inferences of Scienter Are Weak .......................................15

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AMI-Government Employees Provident Fund Management Co. v. Alphabet Inc.*,
No. 23-cv-01186-RFL, 2025 WL 899959 (N.D. Cal. Mar. 24, 2025).....................................5

*In re Apollo Group, Inc. Securities Litigation*,
No. CV-10-1735-PHX-JAT, 2012 WL 2376378 (D. Ariz. June 22, 2012), *aff'd sub nom. Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
774 F.3d 598 (9th Cir. 2014) ............................................................................................8

*In re Apple Inc. Securities Litigation*,
No. 19-cv-02033-YGR, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ...............................13

*Azar v. Yelp, Inc.*,
No. 18-cv-00400-EMC, 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) .............................10

*Barnes v. Edison International*,
No. CV 18-09690 CBM, 2021 WL 2325060 (C.D. Cal. Apr. 27, 2021), *aff'd*,
No. 21-55589, 2022 WL 822191 (9th Cir. Mar. 18, 2022).......................................................7

*Berson v. Applied Signal Technology, Inc.*,
527 F.3d 982 (9th Cir. 2008) ..................................................................................... 10, 12

*In re BofI Holding, Inc. Securities Litigation*,
977 F.3d 781 (9th Cir. 2020) ..................................................................................... 1, 2, 3, 4

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002) ........................................................................................10

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) ............................................................................... 2, 4, 14

*In re Cutera Securities Litigation*,
610 F.3d 1103 (9th Cir. 2010) ........................................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)........................................................................................................6

*Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
856 F.3d 605 (9th Cir. 2017) ..........................................................................................9

*Donley v. Live Nation Entertainment, Inc.*,
No. CV 23-6343-KK-ASx, 2024 WL 794641 (C.D. Cal. Feb. 23, 2024) ..........................15

*In re Eargo, Inc. Securities Litigation*,
656 F. Supp. 3d 928 (N.D. Cal. 2023) .............................................................................9

ii

*Ferris v. Wynn Resorts Ltd.*,
    462 F. Supp. 3d 1101 (D. Nev. 2020)..................................................................................... 10

*In re Genius Brands International, Inc. Securities Litigation*,
    97 F.4th 1171 (9th Cir. 2024) ................................................................................................. 5

*Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*,
    63 F.4th 747 (9th Cir. 2023) ............................................................................................ 8, 13

*Gonsalves v. Block, Inc.*,
    No. 25-cv-00642-NW, 2026 WL 42657 (N.D. Cal. Jan. 6, 2026)......................................... 5

*Henryhand v. Dorel Juvenile Group, Inc.*,
    No. CV 17-00180 SJO (AGRx), 2017 WL 7806622 (C.D. Cal. Aug. 9, 2017) .................... 9

*Joyce v. Amazon.com, Inc.*,
    No. 2:22-cv-00617, 2023 WL 8370101 (W.D. Wash. Dec. 4, 2023) ................................... 11

*Kang v. PayPal Holdings, Inc.*,
    620 F. Supp. 3d 884 (N.D. Cal. 2022) ................................................................................. 10

*Lew v. ON Semiconductor Corp.*,
    No. CV-24-00594-PHX-SMB, 2025 WL 1918543 (D. Ariz. July 11, 2025)........................ 8

*Lloyd v. CVB Financial Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ............................................................................................... 5

*Macomb County Employees Retirement System v. Align Technology, Inc.*,
    39 F.4th 1092 (9th Cir. 2022) ............................................................................................... 8

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024)............................................................................................................. 10

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ................................................................................... 4, 12, 14

*Nguyen v. Radient Pharmaceuticals Corp.*,
    No. SA CV 11-0406 DOC (MLGx), 2011 WL 5041959 (C.D. Cal. Oct. 20, 2011).............. 3

*In re NVIDIA Corp. Securities Litigation*,
    768 F.3d 1046 (9th Cir. 2014) ............................................................................................. 11

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015).................................................................................................... 1, 8, 9

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
    774 F.3d 598 (9th Cir. 2014) ......................................................................................... 7, 8, 9

*Pirani v. Netflix, Inc.*,
    No. 22-cv-02672-JST, 2024 WL 4894291 (N.D. Cal. Nov. 26, 2024)................................. 9

DEFENDANTS' REPLY ISO MOTION TO DISMISS SAC          Case No. 5:24-cv-08220-NW

*In re Pivotal Securities Litigation*,
No. 3:19-cv-03589-CRB, 2020 WL 4193384 (N.D. Cal. July 21, 2020)...............................9

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ............................................................................ 7, 10, 12

*Prodanova v. H.C. Wainwright & Co.*,
993 F.3d 1097 (9th Cir. 2021) ........................................................................ 11, 12, 13

*In re Questcor Securities Litigation*,
No. SA CV 12-01623 DMG (FMOx), 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ........... 14

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014), *overruled on other grounds by City of Dearborn
Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
856 F.3d 605 (9th Cir. 2017) ....................................................................................... 12

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001), *abrogated on other grounds by Tellabs, Inc. v. Makor
Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............................................................... 14

*Schueneman v. Arena Pharmaceuticals, Inc.*,
840 F.3d 698 (9th Cir. 2016) ...................................................................................... 11

*SEB Investment Management AB v. Symantec Corp.*,
No. C 18-02902 WHA, 2019 WL 2491935 (N.D. Cal. June 14, 2019)................................ 15

*Sigman v. Nuscale Power Corp.*,
No. 3:23-cv-01689-IM, 2025 WL 1455432 (D. Or. May 21, 2025) ..................................... 9

*In re Silicon Graphics Inc. Securities Litigation*,
183 F.3d 970 (9th Cir. 1999) ....................................................................................... 15

*Stephens v. Maplebear Inc.*,
No. 5:24-cv-00465-EJD, 2025 WL 1359125 (N.D. Cal. May 9, 2025) ............................... 9

*Strezsak v. Ardelyx Inc.*,
No. 21-cv-05868-HSG, 2024 WL 1160900 (N.D. Cal. Mar. 18, 2024) .............................. 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)............................................................................................... 11, 15

*In re Teva Securities Litigation*,
671 F. Supp. 3d 147 (D. Conn. 2023)............................................................................. 3

*In re Vantive Corp. Securities Litigation*,
283 F.3d 1079 (9th Cir. 2002), *abrogated on other grounds by Tellabs, Inc. v.
Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)....................................................... 11, 15

iv

*In re VeriFone Holdings, Inc. Securities Litigation*,
  704 F.3d 694 (9th Cir. 2012) .................................................................................. 12

*Webb v. Solarcity Co.*,
  884 F.3d 844 (9th Cir. 2018) .................................................................................. 11

*In re Wells Fargo & Co. Shareholder Derivative Litigation*,
  282 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................................. 13

*Weston Family Partnership LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) ............................................................................... 7, 12

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ............................................................................... 6, 7

*In re Yahoo! Inc. Securities Litigation*,
  No. C 11-02732 CRB, 2012 WL 3282819 (N.D. Cal. Aug. 10, 2012), *aff'd*,
  611 F. App'x 387 (9th Cir. 2015) ........................................................................... 10

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .................................................................................. 14

## INTRODUCTION

Plaintiffs have failed again in their attempt to convert the DOJ's unproven antitrust allegations into securities fraud. The Opposition ignores controlling cases and recycles deficient arguments that fail to overcome Defendants' showing that the SAC suffers from multiple, fatal flaws.

Plaintiffs fail to plead loss causation. The SAC does not show any "truth" was revealed. Plaintiffs still do not connect the *Bloomberg* and *NYT* articles ("Articles") to their theory of fraud, a loss causation requirement that remains unsatisfied. (Order at 9-10). Plaintiffs also ignore that they are required to show that the alleged corrective disclosures revealed "new information." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020). The Articles do not disclose new information and even rely on earlier 2021 *Wall Street Journal* articles that report more information. Plaintiffs make no attempt to satisfy their burden of showing that the market treated the DOJ's allegations "as sufficiently credible to be acted on as truth," *id.* at 792, while asking the Court to ignore analyst reports that expressed skepticism. The quick rebound after the modest stock drop also undercuts Plaintiffs' attempt to show loss causation, as this Court held. The facts underpinning that holding have not changed, so the Court need not revisit its ruling just because an "expert" disagrees.

Defendants showed that the challenged statements are not actionable. Plaintiffs counter that is a "factual" issue, but ignore multiple, on-point Ninth Circuit decisions that hold otherwise. Even if actionable, Plaintiffs do not plead facts "going to the basis" of Defendants' challenged opinions and thereby fail to satisfy the Supreme Court's *Omnicare* falsity test for statements of belief. And Plaintiffs do not show there was a duty to disclose the allegedly illegal business practices in any case.

Finally, the Opposition does not dispute that the SAC lacks any allegations showing what Defendants knew. Rather, Plaintiffs' argument is: Defendants spoke, therefore they had scienter. Courts reject that argument for good reason—it eviscerates the scienter test. Plaintiffs still have not offered a coherent theory of fraud, and posit that stock sales by some defendants establish scienter, while ignoring multiple on-point Ninth Circuit decision that have affirmed dismissal where, as here, the trading histories are missing and Plaintiffs fail to show that the timing or amounts are suspicious.

In sum, Plaintiffs' failure to plead three elements give rise to six independent grounds for dismissal. Accordingly, this Court should grant Defendants' motion to dismiss with prejudice.

1

DEFENDANTS' REPLY ISO MOTION TO DISMISS SAC            Case No. 5:24-cv-08220-NW

### **ARGUMENT**

**I.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION**

The Opposition does not overcome Defendants' showing that Plaintiffs' loss causation allegations fail again for two independent, related reasons: (A) Plaintiffs do not show the "truth became known" and (B) the stock decline following the news of the DOJ Complaint was "modest," as shown by the "quick and sustained recovery." (MTD 4-12.)  In line with the Court's Order, and on-point Ninth Circuit decisions, this Court should dismiss on both grounds again.

### **A.    Plaintiffs Fail to Show Any "Truth Became Known"**

Plaintiffs' failure to show that any "truth became known" remains a fatal deficiency. (MTD 5:8.)  There are three separate reasons why the SAC's loss causations fail to show any alleged "truth became known" in connection with the DOJ lawsuit in September 2024.

#### 1.    Plaintiffs Fail to Connect the Articles to Their Fraud Theory

The SAC relies on the same two Articles as the CAC "without connecting these articles to Plaintiffs' theory of fraud." (Order at 10.)  The Articles say the exact same things as before—none of it was fraud revealing.  The Articles do not mention the challenged statements, they do not address the subject matter of the challenged statements relating to the features and benefits of Visa's network capabilities, and they do not suggest that Visa engaged in a securities fraud.  Accordingly, Plaintiffs again fail to "demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." (MTD 6 (quoting *Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017)).)

#### 2.    The Alleged Corrective Disclosures Do Not Reveal New Information

An alleged "corrective disclosure . . . must by definition reveal new information to the market that has not yet been incorporated into the price" of an issuer's stock. (MTD 6:15 (quoting *BofI*, 977 F.3d at 794).)  Defendants showed that the Articles offered by Plaintiffs as alleged corrective disclosures do not offer "new information" in light of *WSJ* articles published three years earlier, in 2021. (MTD 6-8.)  The Opposition counters with misdirection in arguing that articles before the Class Period cannot "correct misstatements about a regulatory clarification that did not exist yet." (Opp. 12:15-16.)  Defendants' argument is not that statements were "corrected" earlier; the argument

2

is that the Articles do not report "new information," as *BofI* requires. The Opposition does not squarely grapple with *BofI*'s "new information" requirement, so Plaintiffs erroneously label it a "truth-on-the-market" defense that Defendants do not assert, and cite unpublished in-circuit case law that predates *BofI* and out-of-circuit case law that does not consider it. (Opp. 12 (citing *In re Teva Sec. Litig.*, 671 F. Supp. 3d 147, 197-98 (D. Conn. 2023)); *Nguyen v. Radient Pharms. Corp.*, 2011 WL 5041959, at *6 (C.D. Cal. Oct. 20, 2011).)

When Plaintiffs confront the 2024 *Bloomberg and NYT* Articles, they wishfully assert that the Articles "disclosed much more" than the *WSJ* articles from 2021. (Opp. 10:21.) That assertion does not withstand scrutiny. Indeed, the September 2024 *NYT* article cites the 2021 *WSJ* articles, which reported that the DOJ's investigation covered (among other things):

- "[L]imit[ing] merchants' ability to route debit-card transactions over card networks that are often less expensive." (MTD Ex. 1 at 2.) ("Ex.")

- "[T]he financial incentives that Visa provides to banks that issue cards on its network" and "whether those incentives encourage banks to not enable routing on other networks." (Ex. 1 at 3.)

- "[F]inancial incentives that Visa gave Square Inc., Stripe Inc. and PayPal Holdings Inc." and "if those deals kept the payments firms from using other card networks or money-movement technologies." (Ex. 2 at 2.)

- "Pricing arrangements of interest to the Justice Department include one where Visa offered financial incentives to PayPal" and "whether those incentives convinced PayPal to encourage people to make payments via Visa-branded cards." (Ex. 2 at 2.)

- "Visa offered to lower fees for Square and to send performance payments to the company that would get bigger when Square sent more transactions over Visa," which "resulted in Square using Visa for many of its Cash App transactions." (Ex. 2 at 3.)

These 2021 *WSJ* articles reported that the DOJ was investigating alleged anticompetitive (*i.e.*, unfair) conduct, including alleged exclusive agreements and customer incentives. Just as Visa's disclosure of the DOJ investigation in March 2021 "undercuts Plaintiffs' argument" on loss causation (Order at 9), so too do the *WSJ* articles from 2021. Plaintiffs thus fail to show that the 2024 Articles revealed "new information," let alone a revelation of fraud, as required. *BofI*, 977 F.3d at 794.

3. Plaintiffs Fail to Show the DOJ Allegations Were Acted Upon as Truth

The SAC fails to show that the DOJ's allegations were acted upon as "truth." (MTD 8-10.)

3

Plaintiffs assert that a "corrective disclosure can come 'from any source.'" (Opp. 13 (quoting *BofI*, 977 F.3d at 790).)  True, but when it comes to other litigants' allegations (*i.e.*, an inherently biased source), "allegations in a lawsuit do not provide definitive confirmation that fraud occurred."  *BofI*, 977 F.3d at 792.  The court explained: "If the market treats allegations in a lawsuit as sufficiently credible to be acted upon as truth, . . . then the allegations can serve as a corrective disclosure."  *Id.*

In *BofI*, the court found loss causation adequately alleged because the allegations at issue came from a complaint filed by a whistle blower who was a "former insider of the company who had personal knowledge of the facts alleged," and resulted in a *30%* plunge in the company's stock price, which suggested that "the market regarded his factual allegations as credible and acted upon them on the assumption that they were true."  *Id.* at 793.  Contrasting the case to *Curry*, *BofI* explained that "the customers who filed complaints in *Curry* were outsiders who lacked any firsthand knowledge of Yelp's practices" and thus "could not attest to whether Yelp was actually engaged in manipulating reviews, nor to whether the reviews the company posted were authentic and independent."  *BofI*, 977 F.3d at 793.  The Ninth Circuit "refused to allow the plaintiffs to allege loss causation 'merely by resting on a number of customer complaints and asserting that where there is smoke, there must be fire.'"  *Id.* (quoting *Curry*, 875 F.3d at 1225).

The Opposition ignores *BofI* requiring a showing that the market "treats allegations in a lawsuit as sufficiently credible to be acted upon as truth," ignores the decision's discussion of *Curry*, the importance of the whistleblower's credibility as a "former insider," and ignores the market's dramatic 30% stock drop as reasons animating the court's holding.  Here, the DOJ cannot be likened to the whistleblower in *BofI*.  The DOJ is not an "insider"—it is like the "outsiders" in *Curry* who "lacked any firsthand knowledge" of Visa's practices.  *BofI*, 977 F.3d at 793.  And the stock price here dipped a modest 6%.  And it is not surprising that Plaintiffs do not attempt to meet their burden of showing that the market treated the DOJ's allegations as credible beyond asserting that the DOJ's allegations are more credible than the allegations in cases like *Curry* because they "constitute the factual findings of the DOJ's three-year investigation." (Opp. 14:16-17.)  Plaintiffs' say-so does not magically convert the DOJ's allegations into "findings."  Plaintiffs cite no precedent that presumes government allegations are truthful or meritorious (a dangerous proposition).  *Metzler Inv. GMBH v.*

4

*Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008), ruled that courts cannot indulge in "unwarranted inferences" and "[c]onclusory allegations" and thereby rejected the allegation that "the market understood" that a fraud was revealed. *Id.* at 1064-65.  This Court should too.

Not only do Plaintiffs fail to plead facts showing that the market credited the DOJ's allegations, they ask the Court to ignore analyst commentary in the face of the DOJ Complaint's filing reiterating that "V's network is generally superior to regionals on acceptance, fraud & auth rates" (Ex. 5 at 1), and that V offers its network "additional benefits such as cybersecurity and fraud prevention." (Ex. 9 at 2.)  Far from construing the DOJ's allegations as revealing a fraud regarding the "capabilities" of Visa's network, the analysts doubled-down in their belief in them.  (MTD 9.)

Whether the analysts opinions are right (or true) is irrelevant.  Their disclosed sentiments bear on whether the market credited the DOJ's allegations.  Analysts opined that the DOJ did not have a "slam dunk case," that Visa's alleged practices "are often normal practices in other industries," and that "[we] have a hard time seeing volume-based pricing as truly anticompetitive." (MTD 9-10 (quoting Exs. 5-7).)  The analysts confirmed that the market was not assuming the DOJ Complaint was viable, let alone a revelation of fraud.  This makes this case far different from Plaintiffs' case, *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016) (Opp. 11.)

In *Lloyd*, the defendant, CVB, was experiencing well-publicized issues with its "largest borrower" and "largest exposure," Garrett Group.  811 F.3d at 1204.  When CVB disclosed an SEC investigation into its loan underwriting, its stock tumbled 22%.  *Id.*  Key to the Ninth Circuit's finding that loss causation was sufficiently pleaded was that "the market and ***various analysts*** perceived the subpoena to be related to CVB's alleged misstatements about Garrett's ability to repay." *Id.* at 1210-11 (emphasis added).  Plaintiffs point to no such thing here.

Plaintiffs' other cases do not consider whether allegations were treated as sufficiently credible to be acted upon as truth. (Opp. 14 (citing *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1178, 1186-87 (9th Cir. 2024) (addressing short seller reports)); *Gonsalves v. Block, Inc.*, 2026 WL 42657, at *8 (N.D. Cal. Jan. 6, 2026) (same); *AMI-Gov't Emps.' Provident Fund Mgmt. Co. v. Alphabet Inc.*, 2025 WL 899959, at *9 (N.D. Cal. Mar. 24, 2025) (no assessment of allegations' credibility).)

DEFENDANTS' REPLY ISO MOTION TO DISMISS SAC          Case No. 5:24-cv-08220-NW

Without any factual allegations showing that the market credited the DOJ's allegations, Plaintiffs have failed to show that the modest stock price decline was caused by the market learning the "very facts about which the defendant lied," as required by *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021).  *Id.* at 1197 (citation omitted).

**B.**     **The Quick and Sustained Recovery Refutes Any Inference of Loss Causation**

The second reason this Court dismissed the CAC was Plaintiffs' failure to "allege sufficient facts to support a plausible inference of loss causation considering the modest stock drop followed by a 'quick and sustained price recovery.'"  (Order at 10 (quoting *Tesla*, 985 F.3d at 1198).)  The Court observed that Visa's stock price declined "6.6% over two trading days" after the Articles were published on September 23, 2024, and then "rebounded" with the price on September 27, 2024, having "already surpassed the closing price on September 24" and a full recovery in the subsequent weeks.  (Order at 10.)  These facts have not changed, so this Court's conclusion should not change.

Plaintiffs offer an expert who second guesses the Court's ruling.  Yet Plaintiffs concede that expert was not asked to opine on loss causation (Opp. 14:24), so his opinions on potential damages (a separate element) are not germane.  (MTD 11:9.)  It's easy enough for a hired expert to say a small number is a big number in light of unidentified "economic literature" (Opp. 16:11), but that does not mean his opinion deserves any credence.  And Plaintiffs have not demonstrated that expert opinion is necessary here to "understand or determine a fact in issue."  (MTD 11 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)).)  The Opposition ignores that multiple decisions confronting similar stock declines and recoveries have granted dismissal without expert opinion.  (MTD 11:25-12:8.)  "In all events, th[e] Court need not reach" the expert, "given Plaintiffs' failure to show a revelation of truth (Part A)."  (MTD 12:9.)

**II.**     **PLAINTIFFS ALSO FAIL TO PLEAD ANY STATEMENT WAS MISLEADING**

**A.**     **The Challenged Statements Are Incapable of Objective Verification**

Defendants showed that Plaintiffs have challenged nonactionable statements that are incapable of objective verification.  (MTD 13.)  The challenged statements reflect speakers' views about what Visa merchants and customers value, given their individual incentives and risk appetite. (*Id*. at 13-14.) The Opposition's lead response is to assert that the issue "entail[s] delicate, fact-

6

intensive assessments that are more properly left to the jury." (Opp. 17 (citation omitted).) Plaintiffs distort the law: "courts routinely dismiss securities actions premised on puffery at the motion to dismiss stage." *Barnes v. Edison Int'l*, 2021 WL 2325060, at *9 (C.D. Cal. Apr. 27, 2021), *aff'd*, 2022 WL 822191 (9th Cir. Mar. 18, 2022). And the Ninth Circuit routinely affirms dismissal on this ground. *E.g.*, *Weston Family P'ship LLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022); *Wochos*, 985 F.3d at 1180, 1184, 1196; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060-61 (9th Cir. 2014); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010); *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606-07 (9th Cir. 2014).

The Opposition next faults Defendants for relying on *Apollo*. (Opp. 17:18-21.) Plaintiffs say that *Apollo* involved "generally optimistic, essentially boilerplate" statements. (*Id.*) The problem for Plaintiffs is obvious: the challenged statements are substantially similar to those at issue in *Apollo*. Here, Plaintiffs challenge statements relating to Visa's product offering, such as: "We feel that across our fraud mitigation capabilities and protections, our dual message capabilities, [and] our security and reliability, dispute resolution, trust, brand protections, et cetera . . . [w]e feel that we are very well in this world." (MTD 14:7-9.) Plaintiffs' challenged statements mirror the ones rejected by the Ninth Circuit in *Apollo*. The *Apollo* defendant said that its "revenue growth is attributable to our offering comprehensive services combining quality educational content, teaching resources, and customer service with formats that are accessible and easy to use for students as well as our corporate clients." 774 F.3d at 606. In *Apollo*, as here, the plaintiffs alleged that certain undisclosed unlawful practices that were subject to government scrutiny were the "true" revenue drivers. *Id* at 606-07. The defendant allegedly "hid the fact that it had created an incentive system for recruiters" that resulted in recruitment of "flawed students, who were ultimately unable to pay tuition." *Id.* at 607. The Ninth Circuit held that the statements were not actionable as a matter of law because the alleged statements were "inherently subjective 'puffing.'" *Id.* at 606. The statements here are indistinguishable. (*Compare id. with* MTD 22:7-20.) *Apollo* is on-point, controlling, and dispositive.

Plaintiffs resist that conclusion based on a contrived legal exception. They argue that the statements here cannot be puffery because they were "made in response to specific questions from analysts." (Opp. 17:27-18:9.) Plaintiffs are wrong. The statements in *Apollo* were also made during

7

conference calls with analysts.  774 F.3d at 603; *In re Apollo Grp., Inc. Sec. Litig.*, 2012 WL 2376378, at *3-5 (D. Ariz. June 22, 2012), *aff'd sub nom. Apollo*, 774 F.3d 598 (9th Cir. 2014).  And other Ninth Circuit cases have held that statements made in response to specific analyst questions are inactionable puffery.  *E.g.*, *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098-99 (9th Cir. 2022) (holding that statements regarding "tremendous growth" made in response to analysts' questions were puffery, despite allegations that growth in China had "slowed materially").

Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023), did not endorse a different rule.  (Opp. 17:21-18:9.)  Plaintiffs, like others who have distorted *Forescout*, "omit[] the Ninth Circuit's additional reasoning" that, in the face of questions about disappointing financial results, "the statements went beyond mere optimism by 'provid[ing] a concrete description of the past and present," including "the company's anticipated poor performance and how that squared with an increase in revenue guidance for the year overall." *Lew v. ON Semiconductor Corp.*, 2025 WL 1918543, at *10 (D. Ariz. July 11, 2025) (second alteration in original) (citing *Forescout*, 63 F.4th at 770-71) (holding response to analyst question was puffery).  Here, Plaintiffs point to no "concrete description of past and present" matters that are objectively verifiable as in *Forescout*.

### B.     Plaintiffs Do Not Show Any Statement of Belief Was Misleading

Even if actionable (they are not), Defendants showed that the challenged statements are opinions—statements reflecting Defendants' beliefs, perceptions, feelings, and thoughts about Visa's competitive advantages and strengths.  (MTD 14-15.)  Plaintiffs do not dispute that this means that they must meet the heightened test for falsity articulated by *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183-86 (2015).  The Opposition wishes away *Omnicare* in a parenthetical.  (Opp. 21:8-12.)  The reason is obvious: Plaintiffs do not satisfy it.

The reason why *Omnicare* held that pleading falsity under an omissions theory would be "no small task for an investor" is because outsiders like Plaintiffs do not know what facts underpin an individual's beliefs.  *Omnicare*, 575 U.S. at 194.  *Omnicare* explained that an opinion statement "is not necessarily misleading when [a speaker] knows, but fails to disclose, some fact cutting the other way." *Id*. at 189.  "[I]nvestors understand that opinions sometimes rest on a weighing of competing

8

facts; indeed, the presence of such facts is one reason why [a speaker] may frame a statement as an opinion." *Id.* at 189-90. That is why *Omnicare* requires Plaintiffs to plead "facts going to the basis for [Defendants'] opinion. . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Id.* at 194; *accord Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).

The Opposition ignores *Align* and multiple cases that dismissed complaints where, as here, no facts "going to the basis of defendants' opinion" were alleged. (MTD 15:21-28) (citing *Pirani v. Netflix, Inc.*, 2024 WL 4894291, at *8 (N.D. Cal. Nov. 26, 2024); *In re Eargo, Inc. Sec. Litig.*, 656 F. Supp. 3d 928, 940 (N.D. Cal. 2023); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *14 (N.D. Cal. July 21, 2020); *Stephens v. Maplebear Inc.*, 2025 WL 1359125, at *6 (N.D. Cal. May 9, 2025); *Sigman v. Nuscale Power Corp.*, 2025 WL 1455432, at *13 (D. Or. May 21, 2025)). The Opposition argues that Plaintiffs have alleged "omitted material facts" (Opp. 20:3-4, 21:16-23), but identifies none, let alone any going to the basis of the opinions. That is fatal under the *Omnicare* test they shun.

In that void's face, the Opposition tries to limit the fatal blow, asserting that Defendants conceded that certain statements are not opinions. (Opp. 20:26-21:8 (citing ¶¶ 149, 152, 154, 166, and 171).) Wrong. The Motion argued that these statements "reflect beliefs . . . about Visa's product features, capabilities, and competitive advantages in the marketplace." (*Compare id. with* MTD 14 (citing ¶¶ 135, 137, 141, 143, 152, 158, 160, 168).) Moreover, the Motion argued that "Plaintiffs do not challenge . . . anything quantifiable or concrete." (*Compare id.* with MTD 12 (citing ¶¶ 154, 171).) That the Motion did not cite one of those paragraphs (¶ 166), clearly an opinion in any event, does not mean Defendants "conceded" that they are not opinions. This is the type of ticky-tack argument courts routinely reject. *Cf. Henryhand v. Dorel Juv. Grp., Inc.*, 2017 WL 7806622, at *6 n.4 (C.D. Cal. Aug. 9, 2017).

As with the other challenged opinions, Plaintiffs do not identify any "facts going to the basis" of the stated opinion that there are "multiple factors" beyond cost including "functionality" that affect merchant choices (¶ 154) or the belief that clients "can reassess their commitments to us at any time," (¶ 171) nor do Plaintiffs plead facts showing these statements were objectively false when made in any case. *See Apollo*, 774 F.3d at 606; (MTD 13). For example, Plaintiffs do not plead any facts

9

showing that "dual messaging versus single messaging" was not "an important distinction" for merchants (¶ 154), or that Visa's clients and merchants could not "reassess their commitments to us at any time or develop their own competitive services." (¶ 171.)   All Plaintiffs offer is their conclusory say-so that those statements were materially misleading for failure to disclose the practices alleged in the DOJ Complaint.  (Opp. 19-21.)  But those uncorroborated allegations are not facts. And Plaintiffs have not shown that they are facts going to the basis of the challenged opinions.

### C.   Plaintiffs Have Not Alleged an Actionable Omission in Any Event

Plaintiffs also have not alleged any duty to disclose the supposedly omitted information. (MTD 16-18.)   Information need be disclosed "only if [it] renders affirmative statements made misleading." *Macquarie Infrastructure Corp. v. Moab Partners*, *L.P.*, 601 U.S. 257, 265 (2024).  It has long been the rule in the Ninth Circuit that defendants must "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  Courts routinely follow *Brody* in dismissing alleged omissions claims where defendants did not make "affirmative" statements on a subject but were "silent on the subject."  *See Intuitive Surgical*, 759 F.3d at 1061-62; *In re Yahoo! Inc. Sec. Litig.*, 2012 WL 3282819, at *8-9 (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F. App'x 387 (9th Cir. 2015); *Ferris v. Wynn Resorts Ltd*., 462 F. Supp. 3d 1101, 1125 (D. Nev. 2020); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *10 (N.D. Cal. Nov. 27, 2018).  This Court should too.

Even if Defendants' views about Visa's competitive advantages amount to affirmative statements about compliance (they are not), Judge Breyer in *PayPal* held that affirmative statements about Regulation II compliance are not made misleading "because a later regulatory inquiry occurs." *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 897 (N.D. Cal. 2022).  Judge Breyer found that PayPal had no duty to disclose or even elaborate on any alleged non-compliance because there was no determination of non-compliance at the time the statements were made.  The plaintiffs did not show that PayPal "in fact violated any regulatory obligation."  *Id*. at 897-98.  The same is true here.

The Opposition cites cases that show the challenged statements did not give rise to any disclosure duty.  (Opp. 19:7-14.) In *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008)*,* defendants affirmatively spoke about their "backlog reports," (*i.e.*, revenue in progress), so

10

the failure to disclose a stop-work order (*i.e.*, gutting the revenue stream) from the government was an actionable omission. *Id*. at 987. In *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016), defendants affirmatively characterized all clinical trial data as "favorable," omitting the fact that rats given large quantities of the study drug had developed cancer. *Id.* at 701-02, 707-08. Plaintiffs do not identify any similar affirmative statement here about Visa's Cliff Pricing or similar tactics. At best, Plaintiffs' case can be reduced to the assertion that Defendants should have made disclosures in light of the DOJ's later allegations—impermissible "fraud by hindsight." *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1084-85 (9th Cir. 2002).

## III.    PLAINTIFFS ALSO FAIL TO PLEAD A "STRONG INFERENCE" OF SCIENTER

Plaintiffs' claim fails for the third, independent reason that it does not plead a "strong inference" of scienter for each Defendant. The "bar set by *Tellabs* is not easy to satisfy." *Webb v. Solarcity Co.*, 884 F.3d 844, 855 (9th Cir. 2018). Plaintiffs do not plead facts giving rise to a strong inference that any Defendant acted with intent to deceive or with deliberate recklessness.

### A.    <u>The SAC Does Not Allege Anything About What Defendants Knew</u>

The SAC does not show what any Defendant knew about anything, at any time, much less anything contradicting any statements. (MTD 18-20.) The Opposition does not dispute that. Instead, Plaintiffs argue that "Defendants specifically addressed" the strategy that Visa was using to "respond[] to the Regulation II Clarification repeatedly." (Opp. 16:9-10.) In other words, Defendants spoke on the subject. Scienter is not a test of what the tongue does. It is a mental-state test that requires Plaintiffs to plead facts giving rise to a "strong inference" that Defendants spoke with an "intent to deceive" or "deliberate recklessness," which "reflects some degree of intentional or conscious misconduct." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014).

The "generalized allegations," that Defendants spoke provide no factual basis to infer anything about Defendants' mental state. *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1109 (9th Cir. 2021). That is why the law does not permit conflating speaking with scienter: "if the mere decision to speak on a topic were indicative of scienter, there would be no distinction between the element of scienter and the requirement to plead a false statement." *Joyce v. Amazon.com, Inc.*, 2023 WL 8370101, at *13 (W.D. Wash. Dec. 4, 2023) (citing *Prodanova,* 993 F.3d at 1107).

11

The Opposition ignores the Ninth Circuit's oft-quoted and followed holding that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler*, 540 F.3d at 1068. (MTD 17.) There is no such "specific information" related to the alleged fraud pleaded. Completely missing are facts showing "the who, what, when, where, and how" of Defendants' knowledge. *Prodanova*, 993 F.3d at 1106 (citation omitted). Plaintiffs fail to plead facts that "directly contradict[ed] what . . . defendant[s] knew at th[e] time" of their statements. *Twitter*, 29 F.4th at 619 (citation omitted).

Plaintiffs are not saved by the "core operations" inference, which is reserved for "rare circumstances." *Intuitive Surgical*, 759 F.3d at 1062-63 (citing *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785, 786 (9th Cir. 2008)). The Motion detailed the reasons why the core operations inference is not satisfied. (MTD 19-20.) The Opposition responds in a paragraph. In Plaintiffs' alternative universe, if something is important to a business or a "core product," the court can infer scienter. (Opp. 19.) If that were the law, the "core operations" inference would not be an exception to the rule that is "not easy" to establish. (MTD 19 (quoting *Intuitive Surgical*, 759 F.3d at 1062; *Killinger*, 542 F.3d at 785 n.3).) Not surprisingly, the Opposition's argument ignores core-operations cases cited by the Motion, including *Berson*, which highlights what is needed. There, the theory was satisfied by allegations that executives would certainly have known when they touted their revenue expectations that their largest contract had been canceled when their factory was a "ghost town" and 80% of the company's revenue was jeopardized by a stop-work order. *Id.* at 984-85, 988 & n.5.

Plaintiffs' own cases further highlight what is missing. (Opp. 22, 24, 25.) In *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014), an oil company experienced leaks in two pipelines a few months apart. After the first leak, but before the second, one officer made statements assuring investors that the second pipeline was unlikely to experience a leak. *Id.* at 572-73. At the time the officer made those statements, she possessed a letter from government regulators notifying her that there was a strong chance that a leak would develop in the second pipeline as well. *Id.* at 574. That government warning was one of many facts giving rise to a strong inference of scienter. *Id.* at 574-75.

In *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir. 2012), independent

12

auditors raised concerns that ultimately led to a restatement that revealed an overstatement of earnings by as much as 600%, *id.* at 700, and cited multiple internal documents, including an "expletive-laden email" from the CEO to the CFO saying: "We need to get to 36.5 cents [in earnings]. Figure it out." *Id.* at 705 (alteration in original). In *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020), there were many facts giving rise to a strong inference of scienter, including an "'I knew it all along' type of admission." *Id.* at *10. In *Forescout*, the plaintiffs alleged statements from at least five different employees, which the court found, together, showed "particularized facts support[ing] the inference that Forescout executives exerted pressure on . . . employees . . . corroborat[ing] Plaintiffs' allegations of a widespread pressure campaign." 63 F.4th at 772-73. In *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074 (N.D. Cal. 2017), the court pieced together multiple facts described as "red flags" that gave rise to a strong inference of scienter, including a whistleblower lawsuit, investigations by the Office of the Comptroller of the Currency and the Consumer Financial Protection Bureau, and an *L.A. Times* article detailing the fraudulent account practices at issue. *Id.* at 1099-1100.

Unlike in Plaintiffs' cases, here there are no admissions, no red flags, no auditor warnings, no restatement, no particularized facts from corroborating witnesses, no internal documents, no government warnings, no revenue losses—just the DOJ's unadjudicated allegations following an investigation that Visa repeatedly disclosed before and during the Class Period.

**B.      The SAC Does Not Plead Facts Showing Any Suspicious Motives**

Fraud is a serious accusation with consequences that are potentially ruinous personally, reputationally, professionally, and financially. For that reason, the Ninth Circuit has held that the "lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter." *Prodanova*, 993 F.3d at 1108. Here, Plaintiffs do not allege any motive for Suh, Jenkyn, or Forestall.

Plaintiffs attempt to manufacture motive by pointing to stock sales by Kelly, Prabhu, McInerney, and Andreski. But the SAC fails to plead facts showing that these sales were suspicious. The Opposition ignores the Ninth Circuit's clear rule that stock sales are only probative of scienter if they are "dramatically out of line with prior trading practices at times calculated to

13

maximize the personal benefit from undisclosed inside information." *Curry*, 875 F.3d at 1226 (quoting *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001)).  The facts that are relevant to this inquiry are: "(1) the amount and percentage of the shares sold; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's trading history." *Metzler*, 540 F.3d at 1067.

**Trading History.**  Plaintiffs do not address the SAC's failure to plead any trading history for McInerney and Andreski, which is fatal to any inference of scienter.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005-06 (9th Cir. 2009); (MTD 21:18-25.).  Further, McInerney's stock sales were not suspicious, as they were made pursuant to a 10b5-1 trading plan.  (MTD 22:1-7.)  Plaintiffs say Defendants have not provided sufficient information about McInerney's 10b5-1 plans (Opp. 25:4-5), yet the trading plan's date is clearly disclosed in the bottom left corner of each Form 4, which for example, state: "The transaction was made pursuant to a Rule 10b5-1 trading plan dated February 22, 2023 adopted by the reporting person." (*E.g.*, Exs. 12 at 2, 6, 8).  His trading plan adopted before the Class Period negates scienter. *Metzler*, 540 F.3d at 1067 n.11.  (MTD 22:5.)

**Timing.**  Plaintiffs also fail to show that the timing of the sales was "calculated to maximize the personal benefit from undisclosed inside information."  *Curry*, 875 F.3d at 1226 (citation omitted).  All occurred at prices below both the Class Period high of $291.56 on September 17, 2024, and the $288.73 closing price on the Class Period's last day.  (MTD 22.)  On-point cases ignored by Plaintiffs hold this counts against inferring scienter.  (MTD 22 (citing *Align*, 856 F.3d at 622; *Ronconi*, 253 F.3d at 435).)

Plaintiffs cite *In re Questcor Sec. Litig.*, 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013), to argue that insider sales need not occur at the absolute peak to support an inference of scienter.  However, *Questcor* found scienter where sales were timed to take advantage of the alleged false statements.  *Id*. at *17.  Here, Plaintiffs "simply detail[] the sales and expect[] the Court to infer the connection between [the] sales and the possession of non-public information.  Such allegations are not sufficient." *Strezsak v. Ardelyx Inc.*, 2024 WL 1160900, at *9 (N.D. Cal. Mar. 18, 2024).

**Amount.**  Plaintiffs fail to show that the amount of sales is suspicious.  Plaintiffs simply claim that Defendants "sold large amounts of stock during the Class Period." (Opp. 24:25-26.)  Yet, the amounts sold are well within the range that courts have repeatedly found insufficient to support

14

a strong inference of scienter. (MTD 23.) In cases ignored by Plaintiffs, the Ninth Circuit has made clear that even much larger sales, such as 69% or 98% of holdings, do not by themselves create an inference of fraud, and typically require corroborative sales by other defendants or additional suspicious circumstances. *See Vantive*, 283 F.3d at 1093; *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987-88 (9th Cir. 1999). Here, Plaintiffs offer neither and ignore these controlling cases in preference for an unpublished decision that predates them. (Opp. 24:26-27.) Plus, Kelly increased his Visa holdings over the Class Period, a fact held to be inconsistent with scienter. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 2491935, at *9 (N.D. Cal. June 14, 2019); (MTD 23-24).

Plaintiffs' reliance on *Donley v. Live Nation Entm't, Inc.*, 2024 WL 794641 (C.D. Cal. Feb. 23, 2024) to argue that Defendants had a motive is misplaced. In *Donley*, the court found motive based on a defendant's sale of over $250 million in stock and the company's failure to disclose an ongoing government investigation until *after* the class period. *Id*. at *1-2, *4. Here, by contrast, there were no suspicious sales (as discussed above) no violation of a consent decree, and Visa repeatedly disclosed the existence of the DOJ's investigation throughout the class period. (¶¶ 1, 239.) *Donley* spotlights the incoherence of Plaintiffs' factually unsupported fraud theory.

### C.    Holistically, the Inferences of Scienter Are Weak

Under a separate, "holistic[]" review of Plaintiffs' scienter allegations, as mandated by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007), Plaintiffs' allegations do not give rise to a strong inference of scienter. No facts are offered showing Defendants did not believe their statements (or have a reason not to). There are no allegations explaining why Defendants (including successive CEOs and CFOs) would all conspire to perpetrate the fraud imagined. At most, Plaintiffs allege that some defendants sold stock, which is not unusual—it is how corporations incentivize and compensate executives. Plaintiffs plead no facts showing that Defendants took advantage of material, non-public information and no facts suggesting any intent to deceive or conscious disregard of the truth. The transparent disclosure of the DOJ investigation cuts against any idea that Defendants were trying to hide anything. An alleged antitrust violation is not fraud.

### CONCLUSION

Plaintiffs have filed three defective complaints. Dismissal with prejudice is now warranted.

15

DEFENDANTS' REPLY ISO MOTION TO DISMISS SAC          Case No. 5:24-cv-08220-NW

Dated: February 13, 2026                        Respectfully submitted,

                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                              By: _____ */s/ Mark R.S. Foster* _____
                                        *Attorneys for Defendants*
                                    Visa Inc., Ryan McInerney,
                              Chris Suh, Vasant Prabhu, Alfred F. Kelly, Jr.,
                              Peter Andreski, Oliver Jenkyn, and Jack Forestell

DEFENDANTS' REPLY ISO MOTION TO DISMISS SAC          Case No. 5:24-cv-08220-NW