UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEIBEI CAI,<br><br>           Plaintiff,<br><br>    v.<br><br>VISA INC., et al.,<br><br>           Defendants. | Case No. 24-cv-08220-NW<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>Re: ECF No. 61 |

On January 23, 2026, Defendants Visa Inc., Ryan McInerney, Chris Suh, Vasant Prabhu, Alfred F. Kelly, Jr., Peter Andreski, Oliver Jenkyn, and Jack Forestell (collectively, "Defendants") filed a motion to dismiss Plaintiffs' second amended class action complaint ("SAC").  ECF No. 61; *see* ECF No. 58 (SAC).[1]

The Court held a hearing on the motion on June 24, 2026.  ECF No. 70.  For the reasons set forth below, the Court GRANTS Defendants' motion and DISMISSES the SAC WITHOUT LEAVE TO AMEND.

I.      **BACKGROUND**

This Order assumes familiarity with the facts from the Court's December 10, 2025 Order, incorporates them by reference, and repeats only those facts most relevant for the resolution of the motion currently before the Court.  *See* ECF No. 55.  In brief, Plaintiffs assert claims under Sections 10(b) and 2(a) of the Securities Exchange Act of 1934 against Visa and seven of its current or former officers for allegedly false and misleading statements they made regarding

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

Visa's high routing volume.[2]  Plaintiffs bring their claims on behalf of a putative class of persons or entities who purchased or otherwise acquired publicly available Visa securities between March 2, 2023, and September 23, 2024.

On December 10, 2025, the Court found that Plaintiffs failed to adequately plead loss causation because the consolidated class action complaint ("CAC") lacked allegations (1) showing a causal connection between Defendants' allegedly material misrepresentations and the loss, or the impact on Visa's stock price; and (2) supporting a plausible inference of loss causation considering the modest stock price drop followed by a 'quick and sustained price recovery.'" ECF No. 55 at 8–10 (quoting *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021)).  And, because Plaintiffs' Section 10(b) or Rule 10b-5 claim failed, so too did their Section 20(a). *Id.* at 10.  The Court thus dismissed the CAC with leave to amend.[3] *Id.* at 11.

Plaintiffs filed the SAC on January 9, 2026.  ECF No. 58.  On January 23, 2026, Defendants filed the instant motion to dismiss.  ECF No. 61.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the [plaintiff]." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  But the tenet that a court must accept a complaint's allegations as true "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Securities fraud class actions must [also] meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014).  Under

United States District Court
Northern District of California

---

[2] Routing volume refers to the number of transactions processed through a debit network.

[3] The Court did not reach Defendants' arguments that the CAC failed to plead falsity and scienter. ECF No. 55 at 10.

Rule 9(b) and the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to the alleged false statements or omissions, and a party must "state with particularity the circumstances constituting fraud or mistake." 15 U.S.C. § 78u-4(b)(2)(A); Fed. R. Civ. P. 9(b). If the complaint does not satisfy the PSLRA's pleading requirements, the Court must grant a motion to dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A).

## III.    DISCUSSION

### A.    Section 10(b)

Section 10(b) prohibits any act or omission resulting in fraud or deceit in connection with the purchase or sale of any security. "To plead a claim under [S]ection 10(b) and Rule 10b-5, the Plaintiff[ ] must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017) (quoting *Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 603).

Defendants argue the SAC fails to plead loss causation, a materially misleading statement, scienter, and control person liability. ECF No. 61. Because the Court finds the SAC fails to plead loss causation, it does not reach Defendants' remaining arguments.[4]

The PSLRA requires the plaintiff to prove "that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). "Loss causation" refers to the "causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). "To prove loss causation, plaintiffs need only show a 'causal connection' between the fraud and the loss . . . by tracing the loss back to 'the very facts about which the defendant lied.'" *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (internal citations omitted). Stated another way, "[t]o establish

---

[4] As the Court does not rely on the documents for which Defendants seek judicial notice, Defendants' request (ECF No. 63) is DENIED AS MOOT.

United States District Court
Northern District of California

United States District Court
Northern District of California

loss causation in a fraud-on-the-market case, the plaintiff must show that after purchasing her shares and before selling, the following occurred: (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020). While Plaintiffs are not required to prove loss causation at the motion to dismiss stage, they must (1) allege a "significant" drop in price, and (2) allege with particularity facts plausibly suggesting that the fraud caused the stock drop, as opposed to some other fact. *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 953–54 (9th Cir. 2023).

### 1. Causal Connection

At the pleadings stage, "[a] plaintiff is not required to show that a misrepresentation was the sole reason for the investment's decline in value in order to establish loss causation." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (citation modified). The "complaint must, however, set forth allegations that if assumed true, are sufficient to provide the defendant with some indication that the drop in defendant's stock price was causally related to the defendant's financial misstatements." *Id.* (citation modified).

The Court previously found that the CAC did not plausibly allege that the drop in the September 24 and 25, 2024 stock price was in response to a September 23, 2024 Bloomberg article, and a September 24, 2024 New York Times newsletter, that allegedly showed that Defendants' earlier statements regarding the effect of the Durbin Amendment or the Regulation II Clarification on Visa were false and misleading. The Court explained that

> The gravamen of Plaintiffs' complaint is that "Visa's true tactics" were revealed to the market when "the news broke concerning the contents of the DOJ's lawsuit, first in news articles, and then in the DOJ Complaint itself." ECF No. 48. However, the timing of these allegedly corrective disclosures undercuts Plaintiff's argument. As noted in the complaint, the DOJ began investigating Visa's debit practices in March 2021, a fact Visa disclosed to investors at that time. ECF No. 38 ¶¶ 14, 209. Yet, Plaintiffs assert that articles published the evening of September 23, 2024, after the market closed, reporting that the DOJ planned to imminently file suit against Visa for antitrust violations caused Visa's stock to drop approximately 5.5% when the market closed on September 24, 2024, without connecting these articles to Plaintiffs' theory of fraud. More is needed to meet the pleading standard, particularly as to the allegedly corrective disclosures that occurred before the filing of the DOJ complaint.

4

ECF No. 55 at 9–10.

Plaintiffs contend that the SAC cures this defect by pleading "that whereas Visa made only the vague disclosure that the DOJ's investigation 'focus[ed] on U.S. debit and competition with other payment methods and networks,' the *Bloomberg* and the *NYT* articles disclosed much more." ECF No. 66 at 17 (citing SAC ¶¶ 179–87; brackets in the original). According to Plaintiffs, the articles revealed "that 'Visa made exclusive agreements to hinder the expansion of competing networks' and 'punishes customers, including merchants, when they try to use competing services to process payments,'" as well as "that Visa 'thwarted efforts by technology companies to enter the market' and 'coerces financial technology firms to work with it by threatening penalties on those who do not, and thus squeezing out potential new competitors.'" *Id.* at 17–18 (citing SAC ¶¶ 130–65, 170–78, 166–69, 188–90).

These allegations do not save the claim, as they fail to plausibly tie the alleged drop in stock to the Bloomberg and New York Times articles, as opposed to the DOJ complaint. The SAC alleges that the "[o]n that day [September 23, 2024], after the market closed, *Bloomberg* reported that the DOJ planned to imminently file suit against Visa for antitrust violations." SAC ¶ 185. The New York Times newsletter followed the next morning. *Id.* ¶ 186 ("On September 24, 2024, before the market opened, *the New York Times*' DealBook newsletter also reported that DOJ was expected to sue Visa."). But while Plaintiffs contend that "[s]ince they disclosed key facts from the DOJ Complaint that were new to the market, . . . the *Bloomberg* and *NYT* articles qualify as independent corrective disclosures" (Opp'n at 18), the SAC does not allege sufficient facts that these publications caused the alleged drop in the Visa stock's value, and that the alleged losses were not instead caused by the filing of the DOJ complaint that same day. *See id.* ("[T]he DOJ Complaint was filed less than 24 hours after the Bloomberg article and the same day as the NYT article and the articles described the contents of the DOJ Complaint.") (citing SAC ¶¶ 185–91; SAC ¶ 191 ("The DOJ filed the DOJ Complaint during trading hours on September 24, 2024 . . .").

Plaintiffs argue that "even if the Court holds that those articles, by themselves, are not sufficient, it still must consider them together with the more extensive disclosures in the DOJ

Complaint under *Lloyd*, 811 F.3d at 1209–1211." ECF No. 66 at 18; *see Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016). But the SAC also fails to allege facts that the stock drop occurred because the market found the DOJ complaint credible and reacted to it. *Cf. In re BofI Holding*, 977 F.3d a 793 ("If the market regarded his factual allegations as credible and acted upon them on the assumption that they were true, as the shareholders have plausibly alleged here, Erhart's allegations established fire and not just smoke."). Plaintiffs argue that "[b]y putting these factual findings in a complaint filed in federal court, the DOJ subjected itself to Rule 11" and that, "[i]f the findings of an extensive DOJ investigation are not sufficiently credible to be a corrective disclosure, then almost nothing is." ECF No. 66 at 21. The problem, though, is that Plaintiffs do not identify any allegations that the drop in stock price was due to the DOJ complaint and not some other, unrelated factor. *Cf. In re BofI Holding*, 977 F.3d at 791 (plaintiffs sufficiently pleaded loss causation where "[t]he shareholders have plausibly alleged that this drop constituted a dissipation of the inflation attributable to BofI's misstatements instead of a reaction to some other negative news unrelated to the alleged fraud.").

Accordingly, Plaintiffs have not adequately pleaded a causal connection between the alleged corrective statements and the decline in stock price.

### 2.    Significant Drop in Stock Price

The Court's December 10, 2025 Order found that Plaintiffs failed to plausibly allege loss causation in part because the CAC lacked "facts to support a plausible inference of loss causation considering the modest stock price drop followed by a 'quick and sustained price recovery.'" ECF No. 55 at 10 (quoting *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021)). Specifically, the Court found that,

> [a]s alleged and acknowledged by Plaintiffs, Visa's stock price fell 6.6% over two trading days near the end of September 2024. ECF No. 38 ¶¶ 178, 179. However, in the days after the drop, Visa's stock price rebounded. ECF No. 45-2 at 12. By September 27, 2024, the price already surpassed the closing price on September 24 ($275.17 on September 27, 2024 as opposed to $272.78 on September 24, 2024) and just a few weeks later, on October 17, 2024, Visa's stock price fully rebounded and exceed the price before the drop ($290.39 on October 17, 2024 as opposed to $288.63 on September 23, 2024). *Id.* Such a quick and sustained price recovery after the modest September 2024 drop refutes Plaintiffs' inference that the alleged

6

concealment of the impact of the Regulation II Clarification on Visa's debit network was causally connected to the loss.

ECF No. 55 at 10.

Plaintiffs seek to cure this defect by "retain[ing] expert Adam Werner to analyze the significance of the drop in Visa's share price and to compare it to the stock drop at issue in *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021)[.]" SAC ¶ 194. The SAC attaches Dr. Werner's expert report and summarizes the findings of his analysis. *Id.* ¶¶ 196–210; ECF No. 58-3 (Werner Report). This is insufficient.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. To that end, "[a]ffidavits and declarations 'are not allowed as pleading exhibits unless they form the basis of the complaint.'" *Yuan v. Facebook, Inc.*, No. 18-CV-01725-EJD, 2021 WL 4503105, at *2 (N.D. Cal. Sept. 30, 2021) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). "[S]pecifically in the context of securities fraud litigation, courts have stricken expert declarations that are attached to a complaint." *Id.* (collecting cases and declining to consider portions of complaint that set forth and relied upon expert's opinions).

Paragraphs 196 through 210 of the SAC do not recite facts, but rather summarize Dr. Werner's opinions from his expert report. *See, e.g.*, SAC ¶ 197 ("Dr. Werner found that Visa's share price decline on September 24, 2024 was statistically significant at the 99% confidence level . . ."); *id.* ¶ 200 ("Dr. Werner further determined that when the volatility difference is taken into account the abnormal price movement . . . of Visa's stock on September 24, 2024 was four times as impactful as the movement in Tesla's stock on October 9, 2017."); *id.* ¶ 206 ("On the basis of both news and statistical analysis, [Dr. Werner] found that random volatility was the most likely explanation for why Visa's stock price increased over the 3-week period following the corrective disclosure. He concluded that because some investors may have had their losses cushioned by random volatility following a corrective disclosure does not mean they suffered no losses."); *id.* ¶ 207 ("Dr. Werner calculated that, despite the fact that Visa's stock rebounded and closed slightly higher on October 17, 2024 than it had on September 23, 2024, the aggregate damages caused to investors by Visa's stock drop on September 24, 2024, was

approximately $423.4 million dollars with approximately 43 million shares damaged."). These are opinions that the Court cannot consider on a Rule 12(b)(6) motion to dismiss. *See Yuan*, 2021 WL 4503105, at \*3 (declining to consider expert's opinions alleged in third amended complaint, as "[the expert]'s opinions 'cannot substitute for facts under the PSLRA' in the TAC") (citations omitted); *Lin v. TMC The Metals Co. Inc.*, No. CV 24-9684 PA (AJRX), 2026 WL 453470, at \*6 (C.D. Cal. Jan. 20, 2026) ("Plaintiffs fail to offer any well-pleaded or particularized facts to support their claim because Mr. Zaydenverg's opinion is an inadmissible legal conclusion.").

Plaintiffs argue that "Dr. Werner simply applied accepted economic analysis to undisputed facts. Plaintiff did not ask him to opine on loss causation (MTD at 11) because he was not providing a legal opinion." ECF No. 66 at 22. But "[a]pply[ing] accepted economic analysis," even to "undisputed facts," does not result in facts. Rather, conducting and recounting the findings of an analysis is inherently an opinion.

For instance, the SAC alleges that "Dr. Werner examined the volatility of Tesla's stock during the class period alleged in that case versus the volatility of Visa stock during the Class Period alleged in this case and found that Tesla stock was ***approximately 2.8 times more volatile than Visa stock***." SAC ¶ 199 (citing ECF No. 58-3 ¶ 34; emphasis in the original).

The SAC also alleges that Dr. Werner "performed an event study" to "assess[] whether Visa's stock price decline on September 24, 2024 can be appropriately characterized as modest." SAC ¶ 196. Dr. Werner then "used the event study he performed to determine if there was a casual [*sic*] link between Visa stock's price recovery on October 17, 2024 and the corrective information alleged" and found that, "[a]ccording to the event study analysis, only October 16, 2024 exhibited a statistically significant price increase during the price recovery period." *Id.* ¶¶ 204–05.

In both cases, Plaintiffs do not allege facts, but rather opinions that are the result of Dr. Werner's analyses. Analyses and methodologies are not unassailable and, indeed, are routinely challenged as unsound or invalid. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993) (The *Daubert* analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that

reasoning or methodology properly can be applied to the facts in issue."); *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.") (citation modified); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047–48 (9th Cir. 2014) ("In the Ninth Circuit, however, expert evidence is inadmissible where the analysis is the result of a faulty methodology or theory as opposed to imperfect execution of laboratory techniques whose theoretical foundation is sufficiently accepted in the scientific community to pass muster under *Daubert*.") (citation modified).  Because Dr. Warner's findings rest on his analyses, they cannot be factual allegations that the Court may consider at this juncture.

The SAC relies solely on Dr. Werner's inadmissible opinions to allege that the drop in Visa's stock was significant; the SAC is otherwise the same as the CAC.  *See Lin v. TMC The Metals Co. Inc.*, No. CV 24-9684 PA (AJRX), 2026 WL 453470, at *6 (C.D. Cal. Jan. 20, 2026) ("Plaintiffs fail to offer any well-pleaded or particularized facts to support their [Section 10(b)] claim because Mr. Zaydenverg's opinion is an inadmissible legal conclusion."); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("To adequately plead loss causation, the [Supreme] Court held, a plaintiff must allege that the 'share price fell significantly after the truth became known.'") (quoting *Dura Pharms.*, 544 U.S. at 347).

The SAC thus fails to cure the deficiencies identified in the Court's December 10 Order, and Plaintiffs' Section 10(b) and Rule 10b-5 claim again fails. The Court therefore DISMISSES the claim.  Plaintiffs have had an opportunity to amend the complaint to allege the requisite facts, yet were unable to do so.  As there is nothing to support that Plaintiffs have new facts they could allege, amendment would be futile.  Accordingly, the dismissal is WITHOUT LEAVE TO AMEND.

**B.    Section 20(a)**

As Plaintiffs fail to state a Section 10(b) or Rule 10b-5 claim, their control person claims under Section 20(a) necessarily fail.  *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1113 (9th Cir. 2021).

United States District Court
Northern District of California

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion and DISMISSES the SAC WITHOUT LEAVE TO AMEND.

**IT IS SO ORDERED.**

Dated: June 29, 2026

_____

Noël Wise
United States District Judge